STATE OF NEBRASKA, APPELLANT, v. ROSE M. TRADER, APPELLEE.

287 N. W. 2d 78

Filed January 8, 1980. No. 42746.

Herbert M. Fitle, City Attorney, and Gary P. Bucchino and Richard M. Jones, for appellant.

Thomas M. Kenney, Douglas County Public Defender, and Bennett G. Hornstein, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C. J.

This appeal is a companion case to the cases of State v. DiMauro and State v. Kessler, *ante* p. 275, 287 N. W. 2d 74. For reasons described herein, we reach a contrary conclusion in connection with this matter.

As in the DiMauro and Kessler cases, the State herein appeals from the order of the District Court for Douglas County, Nebraska, sustaining the defendant Rose Trader's motion to suppress wiretap evidence obtained by the State. Unlike the evidence in the DiMauro and Kessler cases, however, we believe the State had properly conducted an initial investigation and that the issuance of the wiretap in this case was appropriate. For that reason we reverse the action of the trial court and remand the case back to the District Court for further proceedings.

It appears from the record that the Omaha police began an investigation of one Rose Trader with reference to reports the police received which indicated that she was conducting a bookmaking operation in violation of Omaha city ordinance 25.77. This investigation resulted from information given to police by three unidentified sources. The first source, whose reliability had not been proven, informed an Omaha police officer on May 10, 1978, that a party named "Rose" was a bookie; that "Rose" had been arrested approximately 1 year prior to May 10, 1978; and that a different party laid off bets to "Rose." This information was partially substantiated by a second source in the latter part of July 1978. The second source, who had proven his reliability to the police, indicated that Rose Trader was then conduct-

ing a bookmaking operation. A third source, whose reliability had not been proven, informed police on August 17, 1978, that a third party had been laying off bets with "Rose." This third party was the same person named by the first source as laying off bets with a party named "Rose."

On September 15, 1978, a police officer drove by the residence of Rose Trader (hereinafter referred to as Trader) to check the activities occurring there. The officer observed a vehicle, which was subsequently determined to be registered to Trader, in the driveway. Two days later, this same officer observed two vehicles, subsequently determined to be registered to Trader, parked at the residence. The next day, September 18, 1978, the police determined, from inspection of prior police records, that Trader had, in October of 1977, engaged in illegal gambling with a third party whose first name corresponded to that given by the three sources. They further determined that the telephone company's records contained a subscription for service to a dwelling located at an address directly behind Trader's residence. However, no such dwelling existed in fact. Further surveillance of Trader was undertaken but proved unsuccessful as no other parties with whom she might be engaged in bookmaking could be identified. Thus, in an attempt to "apprehend or at least identify the other parties" to the gambling operation, the Douglas County Attorney, on October 5, 1978, applied for a court-ordered wiretap pursuant to sections 86-701 to 86-707, R. R. S. 1943.

The application was granted that same day and presented to the telephone company the following day. At that time, the police were advised that Trader had changed her telephone number to a nonpublished listing. This number was determined on October 10, 1978, and an amended court order was entered on that same date authorizing the wiretap of this new listing.

The affidavit recited in detail the facts upon which the State sought the order. The affidavit indicates that before seeking the wiretap, the police conducted an investigation which disclosed characteristics common to and familiar with bookmaking operations.

Moreover, the affidavit recited that because of the location of the home in question, the nature of the operation, and the need to apprehend or identify the other parties to the illegal operation, normal police investigative methods had failed in the past and were most likely to fail in the future.

Unlike the activity in the DiMauro and Kessler cases, the affidavit in this case discloses that the police department did indeed attempt other investigative procedures before seeking the authorization for the wiretap.

The defendant argues that the evidence fails to disclose that the State has used all other means at its disposal and lists for us a number of other techniques which might have been employed. While it may be true that there may be other techniques which could have been employed, we have heretofore held that it is not necessary for the State to use all other investigative techniques before making application for a wiretap. In State v. Kolosseus, 198 Neb. 404, 253 N. W. 2d 157, we said, "The statutory language does not require that every conceivable kind of investigation must first be tried. Neither does it require that all methods be either tried, or shown to be unlikely to succeed or to be too dangerous. * * * As we have previously noted, the cited cases confirm the statute makes no such requirement." See, also, United States v. Jackson, 549 F. 2d 517 (8th Cir., 1977); United States v. Abramson, 553 F. 2d 1164 (8th Cir., 1977), cert. den., 433 U. S. 911, 97 S. Ct. 2979, 53 L. Ed. 2d 1095 (1977); United States v. Losing, 560 F. 2d 906 (8th Cir., 1977), cert. den., 434 U. S. 969, 98 S. Ct. 516, 54 L. Ed. 2d 457

(1977). Our examination of the affidavit and evidence in this case satisfies us that the necessary prerequisite investigation was conducted and that normal police investigative methods had either failed or were most likely to fail in the future. The State was therefore entitled to the issuance of the wiretap in this case. The order of the District Court sustaining the motion to suppress was in error and is therefore reversed and the cause remanded with directions in conformance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.