**UNITED STATES of America**
**v.**
**Ralph STAINO and Alfred Viner.**
**Crim. A. No. 73–96.**

United States District Court,
E. D. Pennsylvania.

May 17, 1973.

853

Joel H. Slomsky, Special Atty., U. S. Dept. of Justice, Philadelphia Strike Force, Philadelphia, Pa., for plaintiff.

Robert F. Simone, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION

WEINER, District Judge.

On September 20, 1972, this Court issued an Order, at the request of the Organized Crime and Racketeering Section of the United States Department of Justice, authorizing electronic surveillance by the United States Secret Service over telephone number 215–473–3484, subscribed to by Alfred "Sonny" Viner and located at 3901 Conshocken Ave, Apartment 82, Philadelphia, Pa. (Misc. No. 72–609). Based upon the intercepted conversations and other evidence, the defendants Viner and Ralph Staino were charged by the Grand Jury with violations of federal laws relating to conspiracy, possession, and dealing in Counterfeit Federal Reserve Notes, 18 U.S.C. §§ 472, 473, 371.

Presently before this Court is the defendants' motion to suppress the evidence which was obtained pursuant to our September 20 wiretap order.

Section 2518 of Title 18, United States Code, and, in particular, subparagraph (3) of that section, pursuant to which the disputed authorization was issued, reads as follows:

"(3) Upon such application the judge may enter an ex parte order . . . authorizing or approving interception of wire or oral communications . . . if the judge determines on the basis of the facts submitted by the applicant that—

(a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;

(b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;

(d) there is probable cause for belief that the facilities from which, or the place where, the wire or oral communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person."

It is the contention of the defendants that the requirements of subsection (b), (c), and (d) were not met by the affidavit of Secret Service Agent McDonnell in that it failed to cite reliable evidence to demonstrate the requisite probable cause to authorize the Order. The government insists that, under the applicable statutory and constitutional standards, the McDonnell affidavit meets each of the requirements in full.

In attempting to determine the propriety and constitutionality of the wiretap at issue, two distinct questions must initially be answered by this Court: whether the information contained in the affidavit is of such a character that a magistrate may credit it in determining whether probable cause has been established, and whether, once it has been determined that the information is creditable, it establishes probable cause.

In order to answer the first of these questions, reference may be helpfully made to the decisions of the Supreme Court in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). In essence, these cases suggest that where the affidavit relies on information furnished by an informant for probable cause, it must demonstrate two things—(1) that the informant himself is personally reliable and trustworthy, and (2) that the information furnished by him was gained in a reliable way.

The information set out in the affidavit which led to the monitoring of the telephone number in question comes from a variety of sources. Initially, substantial information was related to the affiant McDonnell and other Secret Service agents by the confidential informant following his arrest for possession of counterfeit notes. Additional information resulted out of an investigation carried out by the informant and other government agents which culminated in the transfer of $2000 in counterfeit bills. Numerous other corroborating steps were taken by the affiant and other agents and were detailed in the affidavit.

We will first consider the personal reliability of the informant. The informant, according to the affidavit, first came to the attention of affiant and the Secret Service following his arrest on September 6, 1972 in Boston, Mass., for possession of $200 in counterfeit Federal Reserve Notes. He provided the agents with an oral statement concerning the source of the notes, identifying that source as one Alfred Viner and stating that he met Viner in Philadelphia and received the notes following a phone call which he placed to 215–473–3484. Following this interview, the informant participated in the investigation which was carried out by the agents. Two telephone calls were made on September 7, 1970 to 215–473–3484, both of which were monitored by the agents with the consent of the informer, which eventually resulted in a sale of counterfeit currency to the informant who was constantly accompanied by a Secret Service agent. Only an isolated portion of the information involving the first purchase of notes from Viner took place without an agent being present. Given these facts and circumstances, it is doubtful whether the information from this source should even be treated under the "informant" standard of *Aguilar* and *Spinelli*, inasmuch as it was verified by the personal observation of a regular identified law enforcement officer at the moment the events described by the informant occurred. In any case, in our opinion, it is clearly sufficient under the applicable constitutional tests to establish the reliability of the informant.

Turning to the second test, it must be established that the information contained in the affidavit, whether based on direct investigation by the affiant or an information supplied by an informant, was obtained by the person furnishing it in a reliable manner. A reading of the affidavit, as noted above, clearly establishes the fact that the information was obtained in the most reliable of all possible ways—by the personal observation and participation of the informant and of other government agents. It is apparent that the gathering of information in such a manner more than satisfies the test of showing that the information was gained in a reliable fashion. *See, e. g.,* United States v. Hood, 422 F.2d 737 (7th Cir. 1970); United States v. Aldrete, 414 F.2d 238 (5th Cir. 1969); United States v. Kidd, 407 F.2d 1316 (6th Cir. 1969). All of the other information contained in the affidavit has its source in personal investigation of the various law enforcement officers involved in the preparation and investigation of the case: the information concerning the listings of telephones was obtained from telephone company records; automobile registration records and background information on the defendants resulted from a personal check of the relevant police and motor vehicle bureau files; identification of the defendant Staino and of the residence outside of which the exchange of contraband took place were made by the informant to a government agent. In sum, with respect to every single statement in the affidavit, the information is shown on the face of the affidavit to have been gained in a reliable manner.

█ As a result, it cannot be seriously doubted that the affidavit, under the rationale of *Spinelli*, provided sufficient cause to believe that defendant Viner was engaging in a pattern of conduct connected with the charged illegal enter-

prise. The only serious question remaining, therefore, is whether the affidavit demonstrated, in addition to the illegal activity itself, sufficient reason to believe that the Viner telephone was being and would be used in connection with the offense under investigation so as to justify the authorization of a wiretap.

We have no doubt but that subsection (d), which requires a showing of probable cause that the premises from which the interception will be made are being or will be used in connection with the offense or are leased by, listed to or commonly used by the person who is committing the offense, is met by the statements made in the affidavit. Telephone company records showed that the telephone which was the subject of the application was listed to "Sonny" Viner. Personal calls made on two occasions by the informant in the company of a special agent, and once by the informant alone, demonstrated that the defendant Viner was engaging in the business of passing counterfeit bills through the use of the telephone number in question.

■ The only remaining probable cause test, then, is whether the application showed probable cause to believe that conversations concerning the illegal enterprise would be discovered by the use of monitoring. Concededly, any attempt to prophesy the future conduct of criminal activities is a difficult task and any attempt to do so must necessarily be premised upon the past experiences of the affiant. Here, the defendant was contacted at the telephone number in question on both occasions when a "buy" was made. It was reasonable, as a result, for the government to presume, and for this Court to agree with their conclusion, that future purchases of counterfeit bills would probably be arranged through this same telephone number. And such reasoning does not, as the defendant seems to suggest, raise a spectre of the future wholesale monitoring of the nation's telephones. The issuance of a surveillance order in this case was closely tied to clearly demonstrated events out of which illegal transactions resulted and was simultaneously surrounded by the various other protections afforded by federal legislation.

■ Certainty is clearly not a prerequisite to our authorization of a wiretap, as is clear from the terms of the statute. Criminal activity, by its very nature, does not follow any universally preordained pattern of operation. And each particular illegal activity must be judged on its own individual terms. Unlike the lottery and gambling situation which was the subject of United States v. Lanza, 341 F.Supp. 405 (D.C.1972), where the Court was able to rely upon a continual and regular pattern of telephone use which is the hallmark of such operations, id. at 418–419, the crimes which the defendants are charged with are necessarily engaged in on a far more sporadic basis and the resultant evidence which would be available to support a finding of probable cause must, consequently, be of a similar nature.

It is, therefore, our conclusion that the requirements of both subsections (b) and (d) of section 2518 were met in the affidavit and that the only remaining question is whether or not the wiretap was necessary to the successful investigation of the defendant's activities as required by 18 U.S.C. § 2518(3)(c).

The defendants contend that, even if probable cause was established to believe that they were using the phones to engage in illegal activity, the order authorizing the wiretap should not have been issued because the ineffectiveness of using other investigative procedures was not established by the affidavit as is required by 18 U.S.C. § 2518(3)(c).

■ It is clear that the statute does not require the government to use a wiretap only as a last resort. Indeed, the provision does not even require the government to employ any other investigative procedure before requesting the is-

suance of an order authorizing the interception of wiretap communications. The burden on the government is, therefore, not a great one, and it has been adequately fulfilled in this instance.

The defendants argue that according to statements in the affidavit, sufficient evidence existed prior to the wiretap to convict both Viner and Staino if that evidence was shown to be true. But, although it is likely that probable cause existed for these arrests, it cannot be supposed that there was the faintest reason to think that the trail ended there. By its very nature, the illegal possession of and dealing in counterfeit notes involves, in most instances, many individuals who would be liable as co-conspirators. And even though the investigative agents were able to uncover the first layer of the operation, a substantial likelihood existed that other persons were involved in the same enterprise. Plainly, normal investigative procedures had ceased to be effective once the visible members of the hierarchy, if one existed, were discovered. To suppose that the investigation should have been terminated at this point is unrealistic. These men were merely the tip of the iceberg; they could always be replaced. In order to root out the offense, those who were ultimately responsible—individuals who were the source of the counterfeit notes and who placed them into circulation—had to be found, and the affidavit amply demonstrates that this would have been impossible by any means other than by the use of wiretaps.

As it is our opinion that the government's primary justification, as related above, for the use of a wiretap in this instance was sufficient to meet the demands of section 2518(3)(c), there is no reason for us to discuss further the other issues raised by the defendants on this same point.

The defendants' motion to suppress is denied.