STATE OF NEBRASKA, APPELLEE, v. THOMAS J. KOLOSSEUS, APPELLANT.

253 N. W. 2d 157

Filed April 27, 1977. No. 40983.

J. William Gallup, for appellant.

Herbert M. Fitle, Gary P. Bucchino, and George A. Sutera, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

CLINTON, J.

The defendant was charged in the municipal court of the city of Omaha with 34 counts of gambling in violation of sections 25.77.010 and 25.77.020 of the ordinances of the city of Omaha. He was found guilty on all counts and fined the sum of $100 on each count.

On appeal to the District Court the judgments were affirmed. The evidence on which the convictions were founded was obtained by means of a wiretap interception of oral communications over the defendant's telephone lines, such wiretap having been authorized by an order of the District Court for Douglas County, Nebraska, pursuant to an application filed by the county attorney of Douglas County under the provisions of section 86-701 through 86-707 R. R. S. 1943. On appeal to this court the issues raised by the defendant are: (1) Whether the defendant's motion to suppress the evidence obtained by means of the wiretap was improperly denied because the wiretap was unlawful. (2) Whether the penalties imposed were excessive and so constituted an abuse of discretion by the court. We affirm.

The pertinent portions of the municipal ordinances are as follows: "For the purposes of this Chapter gamble shall mean to enter into an agreement with another person whereby a person risks the loss of money or property to realize a profit in any game; to make use of any mechanical device or instrument in which the element of chance is the controlling factor to realize a profit; or to enter into a wager wherein the risk of the loss of money or property to realize a profit is dependent upon the outcome of any future happening." § 25.77.010, Ordinance 24314, § 1, City of Omaha.

"It shall be unlawful for any person purposely or knowingly to gamble, offer to gamble, or provide facilities for gambling; provided, however, the provisions of this Section shall not make unlawful any act permitted by state law." § 25.77.020, Ordinance 24314, § 1, City of Omaha.

The application for the wiretap was executed by Donald L. Knowles as county attorney of Douglas County, Nebraska. The cases were prosecuted by Gary Bucchino, city prosecutor of the city of Omaha.

The defendant's contention that the interceptions were illegal is founded upon the following: (1) Gary Bucchino, as city prosecutor, had no power to prosecute in a case where evidence is obtained by wiretap. (2) Title 18 U.S.C.A., section 2516, authorizes a state prosecutor to apply for a wiretap insofar as the crime of gambling is concerned only where the interception will provide evidence of a felony offense and gambling in Nebraska is not punishable as a felony. (3) A prosecution for violation of a city ordinance is a civil action and evidence obtained by wiretap interception under the above statute is inadmissible in such civil action. (4) The application is insufficient under the pertinent statutes because it does not adequately state that other investigative procedures have been tried and failed, or why other investigative methods reasonably appear to be unlikely to succeed if tried. Title 18 U.S.C.A., § 2518; § 86-705(1)(c), R. R. S. 1943.

Even if we assume arguendo that the status of the prosecutor who conducts the trial is relevant to the issue of the validity of the wiretap authorization, the defendant's first point regarding the alleged lack of standing of Gary Bucchino is not well taken. Section 29-104, R. R. S. 1943, provides as follows: "The term prosecuting attorney shall mean any county attorney. Such term shall also mean any city attorney or assistant city attorney in a city of the metropolitan class when such attorney is prosecuting any violation designated as a misdemeanor or traffic infraction." Judicial notice is taken of the status of public officers and their official positions within the jurisdiction of the court. Rhodes v. Crites, 173 Neb. 501, 113 N. W. 2d 611; § 27-201, R. R. S. 1943. We also take judicial notice of the fact that Gary Bucchino is by appointment a deputy county attorney of the County of Douglas. He therefore had authority to prosecute misdemeanors in a court of competent jurisdiction.

The defendant's second point involves the construction and application of Title 18 U.S.C.A., section 2516(2), and section 86-703, R. R. S. 1943. Federal law preempts the field in the area of interception of oral or wire communications and prohibits the use of such intercepted communications or any evidence derived therefrom, if the disclosure is in violation of Title 18 U.S.C.A. Federal law authorizes such interceptions and use of such evidence if a state statute permits it and the authorizing state statute meets the minimum requirements of the pertinent provisions of the federal statute. Title 18 U.S.C.A., § 2516. See, also, Senate Report No. 1097, 90th Congress, 2d Session, 1968, U. S. Code Cong. & Admin. News, p. 2187.

Title 18 U.S.C.A., section 2516(2), provides that the principal prosecuting attorney of any state or the principal prosecuting attorney of any subdivision thereof, if authorized by statute of the state, may make application to a state judge for an order authorizing interception or wiretap and the judge may grant, in conformity with Title 18 U.S.C.A., section 2518, "and with the applicable State statute," an order authorizing an interception in the investigation of certain specific offenses, i.e.,: ". . . when such interception may provide or has provided evidence of the commission of the offense of murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marihuana or other dangerous drugs, or other crimes dangerous to life, limb, or property, and punishable by imprisonment for more than one year, designated in any applicable State statute authorizing such interception." Section 86-703, R. R. S. 1943, provides in part: ". . . or any county attorney may make application to any district court of this state for an order authorizing or approving the interception of wire or oral communications, and such court may grant, subject to the provisions of sections 86-701 to 86-707, an order author-

izing or approving the interception of wire or oral communications by law enforcement officers having responsibility for the investigation of the offense as to which application is made, when such interception may provide or has provided evidence of the commission of the offense of murder, kidnapping, robbery, bribery, extortion, dealing in narcotic or other dangerous drugs, gambling, or any conspiracy to commit any of the foregoing offenses.''

Since federal law governs, it is apparent that the more strict provision, whether federal or state, must be followed. Defendant argues that the federal statute authorizes an interception in the case of specified crimes, in this instance, gambling, and only if that offense is a felony under state law punishable by imprisonment for more than 1 year. This argument is founded upon the position that the phrase in Title 18 U.S.C.A., section 2516(2), ''and punishable by imprisonment for more than one year, modifies all the previously listed offenses. On the other hand, the State argues that logically and grammatically the above phrase modifies only the first immediately preceding antecedent, to wit, ''or other crime dangerous to life, limb, or property.''

The vast majority of state and federal courts which have had occasion to consider the proposition have resolved the issue contrary to the defendant's contention. People v. DiFiglia, 374 N. Y. S. 2d 891, 50 App. Div. 2d 709; United States v. Carubia, 377 F. Supp. 1099; United States v. Curreri, 388 F. Supp. 607. We recognize that the last two cited opinions are those of a trial court, but we have examined their reasoning and found it sound. Our examination of the federal statute leads us to conclude that the State's position is clearly the correct one.

Title 18 U.S.C.A., section 2516(2), describes two general categories of crime, to wit, certain crimes described by name, to wit, murder, kidnapping, gambling, etc., and ''other crime . . . .'' These two

categories are separated by the disjunctive conjunction "or." The two following modifying phrases are connected by the copulative conjunction "and". The grammatical, as well as the logical, consequence of this use of language is that the "or" divided the two categories mentioned. The "and" connects the two modifying phrases which constitute the two characteristics of the second category, viz., "dangerous to" and "punishable by imprisonment." The imprisonment provision, therefore, does not modify the specifically named crimes. The legislative history of this language in the statute has been examined and it likewise supports this construction. This is true even though the rules of punctuation were violated in this instance by the placement of a comma before the modifying phrase "and punishable by imprisonment." See United States v. Carubia, *supra*.

The defendant next argues that a prosecution for a violation of a municipal ordinance is, under Nebraska law, a civil proceeding and since section 86-703, R. R. S. 1943, and Title 18 U.S.C.A., section 2516, authorize interception of communications only for the purpose of obtaining evidence in the investigation of certain specified crimes, the interceptions were unlawful and the wiretap evidence inadmissible under the prohibitions of section 86-705(9), R. R. S. 1943, and Title 18 U.S.C.A., section 2518(9).

The defendant's contention would be well taken if the prosecution here were in fact a civil proceeding. In support of his claim that the proceeding is civil in nature defendant cites State v. Amick, 173 Neb. 770, 114 N. W. 2d 893. The State additionally cites State v. Johnson, 191 Neb. 535, 216 N. W. 2d 517; State v. Peterson, 183 Neb. 826, 164 N. W. 2d 649; State v. Lookabill, 176 Neb. 254, 125 N. W. 2d 695; and State v. Hauser, 137 Neb. 138, 288 N. W. 518. We have, in some of those cases and others, stated that while in form such prosecutions are criminal, they are in

fact civil proceedings to collect a penalty. McLaughlin v. State, 123 Neb. 861, 244 N. W. 799. More recently, however, we have found it unnecessary to rely upon the proposition that such proceedings are civil in substance. State v. Johnson, *supra*. That case was a prosecution under the same ordinance involved in the present case and we there said: "The Nebraska statute, section 24-536, R. S. Supp., 1972, excludes *criminal offenses of the nature* involved in this case from the availability of a jury trial." (Emphasis supplied.) The maximum penalty for the offenses here involved is 6 months imprisonment. State v. Johnson, *supra*. Such an offense is a misdemeanor by definition. § 29-102, R. R. S. 1943. State statutes define and make criminal various types of gambling offenses. Some are misdemeanors. Some are felonies. §§ 28-941 to 28-952, R. R. S. 1943.

The reasons for the usefulness of the criminal-civil dichotomy as it relates to prosecution for violation of municipal ordinances is somewhat obscure. This court apparently had occasion for the first time to classify an ordinance violation as civil in Foley v. State, 42 Neb. 233, 60 N. W. 574, and cited as authority for the distinction 1 Bishop, Criminal Law, § 32; 1 Bishop, Criminal Procedure, § 892; and Liberman v. State, 26 Neb. 464, 42 N. W. 419. Liberman v. State, *supra,* is not authority for the proposition for which it was cited in the Foley case. The court in Liberman v. State, *supra,* simply pointed out that our Constitution does not require a jury trial in prosecutions for minor offenses in violation of municipal ordinances and involving acts which are not made criminal by state statute. The body of the opinion in that case did not even discuss the nature of the action although the syllabus described it as quasi-criminal. The source of text authority above cited is apparently the statement in some ancient cases that the collection of a monetary penalty for violation of a city ordinance is accomplished by the common law

action of debt. It is upon that scant foundation that the classification rests. This court and others thereafter seized that wholly unnecessary distinction either to justify or to offer additional make-weight grounds for (1) tolerating loose pleading of the charge as in Foley v. State, *supra;* (2) a lesser standard of burden of proof than in a regular criminal prosecution as in State v. Peterson, *supra;* and (3) no constitutional requirement of a jury trial for petty offenses where no such trial was required at common law. The latter constitutes the bulk of the cases mentioned.

Whatever justification the classification may have historically had, it has no application where, as here, the offense charged is punishable by imprisonment; the offense charged is also a violation of state law; and is an offense which has been historically treated as criminal.

We hold, therefore, that a prosecution for gambling in violation of a city ordinance which is punishable by imprisonment is a criminal prosecution both in form and in substance and is one of the crimes for which wiretap may be authorized if the requirements of the pertinent statutes are met.

The fourth and principal point raised by the defendant is the sufficiency of the application's allegations to support the finding of the District Judge with respect to the failure or futility of investigative procedures other than interception. Title 18 U.S.C.A., section 2518, and section 86-705, R. R. S. 1943, are, in all substantive ways and in wording, virtually identical. They describe the information the application must contain, what the judge entering the order must be able to find, and what the order must contain, as well as certain other matters. The particular subsections of the statutes at issue here are (1)(c) and (3)(c). These subsections read as follows: "A full and complete statement as to whether or not other investigative procedures have been tried and

failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous; . . . . normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous; . . . ." The defendant makes no contention that the application is insufficient to meet the requirements of the other subsections of section 2518(1), Title 18 U.S.C.A., or to support the corresponding findings by the court as required by other sections of the statute.

Subsection 10(a) of section 2518, Title 18 U.S.C.A. (subsection (9) of section 86-705, R. R. S. 1943), requires suppression of the contents of any interception or evidence derived therefrom if "(i) the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval." No contention is here made that the order was insufficient on its face, or that the interception was not made in conformity with the order. Hence, the question before us is whether the communications were unlawfully intercepted because the allegations were insufficient to permit the judge to find that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried." We find the allegations were sufficient and the interception was lawful.

In United States v. Donovan, 429 U. S. 413, 97 S. Ct. 658, 50 L. Ed. 2d 652, the Supreme Court of the United States indicated that interceptions were unlawful and suppression required if the deficiency was such that it played a "substantive role" with respect to judicial authorization. There can be no question that subsections (1)(c) and (3)(c) lay down substantive requirements. In United States v. Giordano, 416 U. S. 505, 94 S. Ct. 1820, 40 L. Ed. 2d 341, the court said that wiretaps were not to be routinely em-

ployed as a first step in the investigation, but were to be used only when it is alleged and found that the other investigative procedures "have been tried and failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." The only issue in Giordano, however, was whether execution of the application by a person not authorized by statute was a substantive defect. It was held to be, and the court pointed out, that the "informed judgment" of the person authorized by statute to sign the application was an important element.

The Supreme Court of the United States has not yet had occasion to specifically consider what allegations are sufficient to meet the requirements of subsection (1)(c). Four federal circuit courts have considered the question of exhaustion of other procedures. These are United States v. Smith, 519 F. 2d 516 (9th Cir.); United States v. Vento, 533 F. 2d 838 (3rd Cir.); United States v. Pacheco, 489 F. 2d 554 (5th Cir.); United States v. Kerrigan, 514 F. 2d 35 (9th Cir.); and United States v. Bobo, 477 F. 2d 974 (4th Cir.). A considerable number of federal trial courts have written opinions on the matter.

It is to be noted that the language of subsection (1)(c) does not require the exhaustion of all other possible or reasonable avenues of investigation. It does not, in fact, require that other methods even be tried if the application demonstrates other procedures are unlikely to succeed or are too dangerous. The requirements are alternative, that is, other methods must have been tried and failed "or" the second alternative must be demonstrated. In United States v. Smith, *supra,* the court said: "Congress, in its wisdom, did not attempt to require 'specific' or 'all possible' investigative techniques before orders for wire taps could be issued. As United States v. Giordano, 416 U. S. 505, 515, 94 S. Ct. 1820, 1827, 40 L. Ed. 2d 341 (1974), states—wire tap 'procedures were not to be routinely employed as the initial

step in criminal investigation,' but it is equally true 'that the statute does not require the government to use a wire tap only as a last resort.' United States v. Kerrigan, 514 F. 2d 35 (9th Cir. 1975); United States v. Staino, 358 F. Supp. 852, 856-7 (E.D. Pa. 1973)." United States v. Vento, *supra,* makes exactly the same point. In that case the court said: "In United States v. Armocida, this Court, in accord with the legislative history, adopted a 'pragmatic' approach to subsection (c). We held that the government's showing is to be 'tested in a practical and common-sense fashion.' There is no requirement that every investigative methodology be exhausted prior to application for a section 2518 authorization. Investigators are not obliged to try all theoretically possible approaches. It is sufficient that the government show that other techniques are impractical under the circumstances and that it would be unreasonable to require pursuit of those avenues of investigation. The government must, however, fully explain to the authorizing judge the basis for such a conclusion." United States v. Pacheco, *supra,* also points out that all possible, imaginable methods need not be tried. We conclude that what is required under the first alternative is that the application make a full and complete disclosure of all that has been done so that the court may make a judgment as to whether more should be required before a tap is authorized.

We now examine the application in the light of the language of the statutes and the principles of the above cases. The verified application of county attorney Knowles, in addition to the necessary formal parts, recites that the purpose of the requested taps was to "provide evidence of the commission of the offense of an Illegal Gambling Operation (Bookmaking) or conspiracy to commit the said offense." It recites that over a period of years as a result of state and federal investigations, a large number of

people have been arrested in Douglas County and convicted of bookmaking; and that as a consequence, other persons, some of whose identities are known and some of whom are unknown, are believed to have moved into the field and are filling the void left by the fact that the larger bookmakers have been put out of business. It describes how the bookmaking operations are carried on, including the reinsuring of bets by "layoff" bets with other parties; that much of the activity is done by telephone; that one of the persons believed to be filling in is Thomas J. Kolosseus; and that at the time the application was made he was believed to have been carrying on at least some of his operations through two certain telephone numbers at a particular address in Omaha listed in the name of J. C. Miller. The affidavit describes in great detail an extensive investigation covering a period of 18 months into the activities of Kolosseus and others who might be connected with him. The method used included surveillance, eavesdropping, tailing, use of informants, and obtaining information on telephone numbers from telephone utilities. The investigation disclosed that telephones used were changed frequently; that some telephones used had forwarding capabilities so that calls could be transferred to unknown numbers; that the defendant used a "Bell Boy" to summon his messengers so that he could communicate with them by telephones from numerous and undisclosed locations; that Kolosseus was, in fact, a bookmaker as shown by the statements of reliable informants; that he appeared to be communicating by telephone with persons in counties other than Douglas who were part of the bookmaking operation; that Kolosseus was operating a bookmaking "hole" in Omaha, but that the informant was unable to locate it; and that the informant had advised that two certain numbers were being used in the bookmaking operation. The application alleged that the communica-

tions to be intercepted "are the telephone communications of Thomas Kolosseus and other parties whose identities as yet are unknown."

It is clear from the contents of the application which we have briefly summarized that there existed probable cause for the arrest of Kolosseus as well as for a warrant for search of the premises where the telephones were located. The defendant contends that because probable cause was shown without the aid of wiretap, the wiretap was not authorized and asserts "the statute's command [is] that wiretaps can be used only as a last resort."

The difficulty with the defendant's position is that neither the statutes nor the cases support him. The statutory language does not require that every conceivable kind of investigation must first be tried. Neither does it require that all methods be either tried, or shown to be unlikely to succeed or to be too dangerous. One federal district court decision apparently considering an order made on an application which relied on the second alternative, United States v. Curreri, 388 F. Supp. 607, holds that where the second alternative is relied upon, in order to establish the unlikelihood of success requirement all possible methods of investigation must be negated, and states that the court to which application is made cannot take judicial notice of what avenues of investigation are possible and accordingly the application must list and negate the feasibility of all possible avenues. The court then went on in that case to list a number of avenues which might have been tried and which apparently were not. The defects of that opinion, it appears to us, are numerous. It lays down requirements beyond those of the statute. The possible avenues of investigation of any particular crime are multitudinous and can vary with the nature of the criminal operation. Even the Congress, had it so chosen, could not, as a practical matter, have listed all possible avenues. As we have previ-

ously noted, the cited cases confirm the statute makes no such requirement.

The application in this case was clearly sufficient. It would enable the court to find (1) that the application contained a full and complete statement of all that had been done; (2) that the investigation was not directed at the defendant alone, but at other persons whose identities were unknown, including those with whom defendant "laid off" bets; (3) that extensive investigation by various methods covering a period of 1½ years had not disclosed evidence sufficient to assure conviction of Kolosseus, or to discover all the persons involved in the alleged conspiracy; and (4) that an integral means by which the crimes were being committed was by use of telephone and other electronic means of communication such as the "Bell Boy," and that the only likely way by which the communications could be discovered and the identity of the unknown parties determined was by means of wiretap.

The defendant was fined the sum of $100 upon each of the 34 counts of which he was found guilty. He argues the sentences are excessive. We do not believe they are.

AFFIRMED.