STATE OF NEBRASKA, APPELLEE, V. DONALD HOLMES, APPELLANT.

STATE OF NEBRASKA, APPELLEE, V. JAMES BEARDSLEE, APPELLANT.

302 N.W.2d 382

Filed February 20, 1981. Nos. 43345, 43403.

Robert B. Creager of Berry, Anderson & Creager, and Toney Redman for appellants.

Paul L. Douglas, Attorney General, and Patrick T. O'Brien for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

Donald J. Holmes and James Beardslee, defendants below, appeal to this court from their convictions and sentences by the District Court of Lancaster County, Nebraska, for the offense of conspiracy to possess marijuana with the intent to deliver, in violation of Neb. Rev. Stat. § 28-4,129 (Reissue 1975) (repealed 1979). The two separate cases involved in this appeal were consolidated for trial below and were also consolidated for argument and briefing in this court. The evidence on which the convictions were based was obtained by means of a wiretap interception of oral communications over defendant Holmes' telephone line, such wiretap having been authorized by an order of the District Court dated June 29, 1978, and issued pursuant to an application filed by the county attorney of Lancaster County under Neb. Rev. Stat. §§ 86-701 et seq. (Reissue 1976). We affirm.

By way of factual background, it appears that on June 29, 1978, an application for the wiretap was

executed by Ronald D. Lahners, county attorney for Lancaster County, Nebraska. The application sought an order authorizing the interception of telephone communications between Donald Holmes, Paul Barzar, William Prettyman, James Beardslee, Inez Beardslee, David Finn, and Kathy Hayes, as well as other individuals whose identities were then unknown, over three designated Lincoln telephone listings. The affidavit signed by Detective Thomas Rathbun of the Lincoln Police Department in support of the wiretap application, dated June 28, 1978, recited that the telephones in question were being utilized by the aforementioned parties in connection with the "possession, use, manufacturing, and delivery of controlled substances, which are narcotics and dangerous drugs. . . ." The affidavit, which is 20 pages in length and contains numerous pages of exhibits, includes a section entitled "History of Investigation," which, among other things, reviews in detail the surveillance of the parties conducted by the Lincoln Police Department over a period of 4 years and documents the possession and importation of narcotics between defendant Holmes in Lincoln, Nebraska, and defendant Beardslee in Wetmore, Texas; and also includes references to prior convictions of Holmes for the possession of various controlled substances.

The affidavit also contains a section entitled "Objectives of Investigation," which also sets forth the reasons and necessity for the wiretap, as follows:

"Affiant has been engaged in investigation of criminal activities relative to controlled substances, narcotics, and dangerous drugs for several years, and has received the benefit of training by fellow officers who have been engaged in such investigation for more than six years, and affiant and said fellow officers have conducted numerous investigations into networks for distribution of controlled substances, including schemes whereby communications concerning possession and delivery of controlled substances

are transmitted by telephone, as well as investigations whereby drug distribution networks are infiltrated by civilian and commissioned undercover officers. It is the experience of affiant and his fellow officers related to affiant that infiltration of a drug distribution network by an undercover agent requires at least several weeks time, may extend over a period of several months before undercover agent is able to gain the confidence of parties involved in such distribution networks to the extent that such parties will confide in the agent about possession and delivery of such substances, and that in many cases infiltration of established distribution by undercover agents is impossible because the agents are not long time acquaintances of the operators of such networks. It is further the experience of affiant and his fellow officers that infiltration of drug distribution schemes conducted by persons of the black race of Lincoln, Nebraska, cannot be readily accomplished by undercover agents of the white race due to cultural and racial traditions in Lincoln, Nebraska, and affiant states that no law enforcement agency conducting operations in Lincoln, Nebraska, currently has a black employee whose identity as law enforcement officer is not well known, nor any non-white undercover agents available to conduct such investigation. It is further the experience of affiant and fellow officers as reported to affiant that continuing optical surveillance of places known to be residences of persons suspected of engaging in distribution of controlled substances, is likely to produce information about the registered owners of vehicles who visit the premises, observations about the shape and size of parcels being carried to and from such residences by visitors, and some information about the occupant but is unlikely to produce, and in the experience of affiant, has failed to produce information concerning arrangements for delivery of controlled substances, the time and place of their arrival, or the location in which such sub-

stances are kept. Affiant states that interception of wire communications is necessary in order to overhear complete conversations which are in and of themselves evidence of conspiracies or other schemes or arrangements for possession, distribution, and delivery of controlled substances, narcotics and dangerous drugs, and affiant knows of no other investigative technique available in this case for obtaining such evidence. Affiant further states that he is aware of no undercover agent currently operating by authority of or in cooperation with the Lincoln, Nebraska, Police Department, the Lancaster County Sheriff's Office, or the Nebraska State Patrol, Division of Drug Control, or any other law enforcement agency, who has gained the confidence of or in any way infiltrated or has been otherwise able to hear conversations by the suspects mentioned in this affidavit, other than CI-1 [confidential informant]; affiant and other officers of the Lincoln, Nebraska Police Department have attempted to use CI-1 by equipping said CI-1 with electronic listening devices, and then sending said CI-1 into the residence of Donald J. Holmes, but said CI-1 has not been able to gain the confidence of either Donald J. Holmes or William Prettyman, Jr."

Based upon this affidavit, the District Court, on June 29, 1978, entered an order finding that there was probable cause to believe that the parties named in the affidavit had committed, or were about to commit, certain offenses which were among those enumerated in Neb. Rev. Stat. § 28-4,125 (Reissue 1975); and that probable cause existed to believe that the telephones from which the communications which were to be intercepted were being used in connection with the possession and delivery of narcotics and other drugs within the State of Nebraska. The court also found that there was probable cause to believe that communications pertaining to the possession and delivery of said drugs would be obtained through the interception proposed by the applicant; and that

normal investigative procedures had failed to or appeared unlikely to be successful in determining the time or place of the arrival of such controlled substances, the identities of the persons supplying, receiving, and delivering said substances, or the plan by which the distribution of the substances would be effectuated. The court ordered that the proposed interception could proceed, and directed that all intercepted communications of an incriminatory nature be transcribed into writing verbatim and filed with the court.

As a result of the information gathered from the interceptions authorized by the court in its order of June 29, 1978, defendant Holmes was charged, as was also James Beardslee, with conspiracy to possess marijuana with the intent to deliver and with possession of marijuana with intent to deliver. Defendant Holmes was also charged, in an additional count, with possession of a controlled substance, to wit: dihydrocodeine.

The defendants each moved the District Court for an order suppressing the intercepted telephone communications, and a hearing on the motion was held on June 13, 1979. On October 3, 1979, the District Court entered an order overruling the motions. A jury was waived by the defendants, and at trial, on October 17, 1979, the cases were consolidated for trial under facts stipulated by the agreement of the parties. At that time, the defendants also renewed their motion to suppress the communications intercepted under the court order.

In its well-reasoned and documented memorandum opinion, dated December 6, 1979, the District Court ruled that the affidavit in question was sufficient; that it alleged sufficient facts to establish probable cause; and that the court's order authorizing the wiretap was proper. On December 14, 1979, the District Court found the defendants guilty of the conspiracy charges, and the remaining counts were

dismissed on motion of the county attorney. The defendants' subsequent motions for a new trial were overruled, and each defendant was sentenced to serve a term of 1 year in the Nebraska Penal and Correctional Complex.

On appeal to this court, the defendants make the following assignments of error: (1) That the District Court erred in overruling defendants' motions to suppress evidence obtained as a result of the wiretap; and (2) That the court erred in finding that the order permitting the wiretap was supported by a sufficient affidavit.

At the outset, we note that § 86-705, the Nebraska statute governing the procedures to be followed to obtain the court's authorization for a wiretap, requires *inter alia* that each application shall be made in writing upon oath or affirmation to a judge of the District Court, and shall include a full and complete statement of the facts and circumstances relied upon to justify the applicant's belief that an order should be issued. The statute also requires that the applicant shall give a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed. Section 86-705(3) then provides: "Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire or oral communications within the territorial jurisdiction of the court in which the judge is sitting, if the judge determines on the basis of the facts submitted by the applicant that: (a) There is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 86-703; (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception; (c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if

tried or to be too dangerous; and (d) there is probable cause for belief that the facilities from which, or the place where, the wire or oral communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person."

The principal issue raised by the defendants on appeal is the sufficiency of the allegations in the affidavit for the wiretap order to support the finding of the District Court with respect to the failure or futility of investigative procedures other than wire interception. In their brief on appeal, the defendants allege that the affidavit fails to demonstrate that any normal investigative techniques had been tried and failed or reasonably appear unlikely to succeed, if tried.

The court has, in several previous opinions, addressed the issue raised by the defendants, and we have consistently held that it is not necessary for the State to utilize all investigative techniques before making an application for a wiretap. See, *State v. Kolosseus*, 198 Neb. 404, 253 N.W.2d 157 (1977); *State v. DiMauro and Kessler*, 205 Neb. 275, 287 N.W.2d 74 (1980); *State v. Trader*, 205 Neb. 282, 287 N.W.2d 78 (1980). In discussing this issue this court, in *State v. Kolosseus, supra* at 414-15, 253 N.W.2d at 163, stated:

"It is to be noted that the language of subsection (1)(c) does not require the exhaustion of all other possible or reasonable avenues of investigation. It does not, in fact, require that other methods even be tried if the application demonstrates other procedures are unlikely to succeed or are too dangerous. The requirements are alternative, that is, other methods must have been tried and failed 'or' the second alternative must be demonstrated. In United States v. Smith, *supra*, the court said: 'Congress, in its wisdom, did not attempt to require "specific" or "all possible" investigative techniques before orders for wire taps could be issued. As United States

v. Giordano, 416 U.S. 505, 515, 94 S. Ct. 1820, 1827, 40 L. Ed. 2d 341 (1974), states — wire tap "procedures were not to be routinely employed as the initial step in criminal investigation," but it is equally true "that the statute does not require the government to use a wire tap only as a last resort." United States v. Kerrigan, 514 F. 2d 35 (9th Cir. 1975); United States v. Staino, 358 F. Supp. 852, 856-7 (E.D. Pa. 1973).' United States v. Vento, *supra*, makes exactly the same point. In that case the court said: 'In United States v. Armocida, this Court, in accord with the legislative history, adopted a "pragmatic" approach to subsection (c). We held that the government's showing is to be "tested in a practical and commonsense fashion." There is no requirement that every investigative methodology be exhausted prior to application for a section 2518 authorization. Investigators are not obliged to try all theoretically possible approaches. It is sufficient that the government show that other techniques are impractical under the circumstances and that it would be unreasonable to require pursuit of those avenues of investigation. The government must, however, fully explain to the authorizing judge the basis for such a conclusion.' United States v. Pacheco, *supra*, also points out that all possible, imaginable methods need not be tried. We conclude that what is required under the first alternative is that the application make a full and complete disclosure of all that has been done so that the court may make a judgment as to whether more should be required before a tap is authorized."

Our examination of the application and affidavit in evidence in this case satisfies us that all the necessary requirements for justification for issuance of the wiretap order in this case existed (including the subpoenas for the toll call records from the telephone company), and that normal police investigative techniques had either failed or were likely to fail.

The findings and judgment of the District Court

are correct, and we affirm the convictions of the defendants in their respective cases.

AFFIRMED.