State of Nebraska, appellee, v.
Delma Lozano, appellant.

311 N.W.2d 529

Filed October 23, 1981. No. 44008.

David T. Schroeder for appellant.

Paul L. Douglas, Attorney General, and Patrick T. O'Brien for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BOSLAUGH, J.

After trial to the court upon stipulated facts, the defendant was convicted on one count of possession of more than 1 pound of marijuana and one count of possession of cocaine. She was sentenced to 1 year's imprisonment on each count, the sentences to run consecutively.

On appeal the principal assignments of error relate to the sufficiency of the evidence to sustain the order authorizing the interception of wire communications. Evidence obtained as a result of the wiretap was also used to obtain a search warrant. The defendant contends her motions to suppress filed in the trial court should have been sustained.

Specifically, the defendant argues that the application for the wiretaps failed to set out full and complete statements as to whether other investigative procedures had been tried and failed or why it reasonably appeared they would be unlikely to succeed. Neb. Rev. Stat. § 86-705 (Reissue 1976) provides in part: "Each application for an order authorizing or approving the interception of a wire or oral communication . . . shall include the following information: . . . (c) A full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous . . . ."

The application, filed on January 29, 1980, incorporated the affidavits of two Scottsbluff, Nebraska, police officers, a Nebraska State Patrol drug investigator, and an informant. The police officers' affidavits set out in detail the various investigative methods that had been tried in attempting to infiltrate a suspected narcotics ring involving people in Scottsbluff, including attempts to use undercover policemen from other jurisdictions, surveillance of the houses and activities of the parties

believed to be involved, and attempts to get information about the ring from victims. The affidavits noted that local officers were handicapped in their investigation attempts because they were instantly recognized by members of the ring; that the ring consisted mainly of black and Hispanic persons, and that currently there were no black or Hispanic officers available to the Scottsbluff Police Department to attempt infiltration; that in 1979 infiltration using police officers from the Cheyenne, Wyoming, police department was unsuccessful; that the persons involved in the ring were longtime friends, relatives, and associates and refused to deal with anyone they did not know; that dissatisfied customers of the ring would not give information to police; and that surveillance of the Lozano residence was not possible because the residence was out in the country and the openness of the surrounding area did not lend itself to covert operations.

In *State v. Kolosseus*, 198 Neb. 404, 415, 253 N.W.2d 157, 163 (1977), we said: "'There is no requirement that every investigative methodology be exhausted prior to application for a [wiretap] authorization. . . . It is sufficient that the government show that other techniques are impractical under the circumstances and that it would be unreasonable to require pursuit of those avenues of investigation.' . . . We conclude that what is required under the first alternative is that the application make a full and complete disclosure of all that has been done so that the court may make a judgment as to whether more should be required before a tap is authorized." In *State v. Holmes and Beardslee*, 208 Neb. 114, 121, 302 N.W.2d 382, 386 (1981), we held that "it is not necessary for the State to utilize all investigative techniques before making an application for a wiretap." We further noted there that "'wire tap "procedures were not to be routinely employed as the initial step in criminal investigation," but it is equally true "that the statute does not require the government to use a wire tap only as a last resort." United States v. Kerrigan,

514 F.2d 35 (9th Cir. 1975); United States v. Staino, 358 F. Supp. 852, 856-7 (E.D. Pa. 1973).'" *Id.* at 122, 302 N.W.2d at 386.

The affidavits in this case listed numerous investigative techniques that had been tried and failed, and also set out a number of reasons as to why other investigative procedures would be likely to fail. We find the affidavits were sufficiently detailed to satisfy the requirements of § 86-705(c).

The defendant also argues that the affidavits accompanying the application for wiretap authority were not sufficient to establish probable cause that she was committing, had committed, or was about to commit a crime enumerated by Neb. Rev. Stat. § 86-703 (Reissue 1976). One of the enumerated crimes in that section is "dealing in narcotic or other dangerous drugs." The affidavits set out several items having to do with the defendant, including information from a confidential informant, proven reliable by independent investigation, that she was selling dope through Bruce's Tavern in Scottsbluff. Searches of the defendant's residence on other occasions had revealed the presence of drug paraphernalia on the premises. Telephone toll records showed that within the 3 months before the application, several calls had been made from the defendant's telephone to Keystone Yacht Sales in Florida, an enterprise run by a person suspected of being a drug trafficker. Checks of license numbers on automobiles parked at the defendant's residence revealed that some of those automobiles were registered to persons known to be or reasonably suspected of being drug-law offenders.

The defendant's main argument in this respect is that the information in the affidavits referring to her came from undisclosed informants and was remote in time from the date of the application. However, the affidavits stated that the information from informants had been verified by independent investigation. The information obtained was sufficiently specific and detailed

to meet the reliability tests set out in *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969).

As to the remoteness issue, *United States v. Hyde*, 574 F.2d 856, 865 (5th Cir. 1978), *rehearing denied* 579 F.2d 643, states: "[T]he staleness issue must be examined more liberally when a continuing pattern of criminal activity is alleged. . . . [S]taleness is an issue which must be decided on the peculiar facts of each case, and . . . a mechanical count of days is of little assistance in this determination. Here, the affidavit alleged a conspiracy that had continued for at least 2 years. It included information considerably less than 2 months old as well as the most recent telephone records available. It was permissible . . . to infer that if criminal conversations had been occurring over this telephone line over the past 2 years, they had not mysteriously stopped within the past month. We cannot disturb on staleness grounds his finding of probable cause."

We find similar circumstances in the present case. The applications alleged an ongoing conspiracy; the information in the affidavits showed that the investigation, as well as criminal activity, had continued up to the very day of the application; and the telephone records relied upon were current as of late December 1979, less than 1 month before the application was made. The information in the affidavits was sufficiently close in time to the application to allow a finding of probable cause as against the defendant. The assignment of error is without merit.

The defendant next argues that the search warrant used to conduct the search of her residence was defective on its face and that the supporting affidavit did not establish probable cause. The argument as to defectiveness is that the transcripts of intercepted telephone calls referred to in the supporting affidavit were not supported by oath or affirmation as required by Neb. Rev. Stat. § 29-814.01 (Cum. Supp. 1980). Here, the

affidavit referred to and incorporated the transcripts of the telephone calls. This was sufficient to satisfy the requirements of the statute.

The defendant further complains that the county judge did not testify specifically as to which transcripts he relied upon in issuing the search warrant.

The issuing magistrate's inability to recall specifically which transcripts he relied upon does not prevent a finding that he did have probable cause to issue the warrant. He testified that he considered each transcript referred to in the affidavit to be part of the application, and the transcripts which refer to criminal activity of the defendant sufficiently establish probable cause to support the issuance of the warrant. The assignment of error is without merit.

The defendant further contends the sentences imposed were excessive. Under the circumstances in this case, the sentences imposed were minimal and the record shows no abuse of discretion.

The defendant complains that the trial court refused to make specific findings of fact and conclusions of law. Neb. Rev. Stat. § 25-1127 (Reissue 1979), upon which the defendant relies, has no application to criminal proceedings.

The judgment of the District Court is affirmed.

AFFIRMED.