MICHELLE L. TAYLOR, APPELLANT, V. EDWARD D. WIMES,
DIRECTOR, STATE OF NEBRASKA, DEPARTMENT OF
MOTOR VEHICLES, AND STATE OF NEBRASKA,
DEPARTMENT OF MOTOR VEHICLES, APPELLEES.

632 N.W. 2d 366

Filed August 7, 2001.    No. A-00-361.

John M. Lefler for appellant.

Don Stenberg, Attorney General, Jodi M. Fenner, and, on brief, Hobert B. Rupe for appellees.

I RWIN, Chief Judge, and S IEVERS and C ARLSON, Judges.

I RWIN, Chief Judge.

## I. INTRODUCTION

Michelle L. Taylor's driver's license was revoked after the director of the Department of Motor Vehicles (DMV) found that the arresting police officer had probable cause to believe Taylor was operating or had physical control of a motor vehicle while having a body alcohol concentration in violation of Neb. Rev. Stat. § 60-6,196(1) (Reissue 1998). Taylor appealed to the district court alleging that the arresting officer failed to comply with due process requirements concerning notice to her of the reasons for her arrest and challenging the arresting officer's probable cause for her arrest. We find, inter alia, that the arresting officer did not need to give Taylor the specific details regarding his probable cause for arresting her and that Taylor's assignments of error are without merit. The district court did not err in affirming the director's decision to revoke Taylor's driver's license.

## II. BACKGROUND

On May 31, 1999, Officer Robert Hurley of the Lincoln Police Department was on patrol and was traveling behind Taylor's vehicle. Hurley was traveling the posted speed limit, 35 miles per hour, and witnessed Taylor's vehicle "pulling away" from him and increasing in distance from three car lengths to seven or eight car lengths. Hurley stopped his patrol car and used stationary radar to confirm that Taylor was, in fact, exceeding the speed limit. Hurley then caught up with Taylor and executed a traffic stop.

When Hurley made contact with Taylor, he noticed a moderate odor of alcohol. Taylor told Hurley that she had been drinking. Hurley had Taylor perform a series of field sobriety tests; formed the opinion that the tests showed signs of impairment; and based upon the test results, Taylor's speech, Taylor's bloodshot and watery eyes, and the odor of alcohol about Taylor's person formed the opinion that Taylor was over the legal limit of body alcohol. Hurley arrested Taylor on suspicion of driving under the influence of alcoholic liquor (DUI) and took Taylor to "Detox." Taylor took a breath test on an Intoxilyzer, and the record indicates that the test result showed that Taylor's alcohol concentration was ".190 gram/. . . 210 L breath."

Hurley completed a "Notice/Sworn Report/Temporary License" form (Notice). The copy of the Notice given to Taylor indicated that "there existed reasonable grounds to believe [she] was operating a motor vehicle while under the influence of alcoholic liquor or drugs," that she "was validly arrested pursuant to Neb. Rev. Stat. Section 60-6,197," that she "was requested to submit to [a chemical] test," and that she "submitted to a chemical test which indicated an alcohol concentration of 0.10 or more." The Notice further indicated the above test result of .190 grams per 210 liters of breath. The Notice indicated that Taylor's license was being revoked, that she could file a petition for a hearing with the DMV to contest the automatic revocation, and that the form was to serve as a temporary license.

Hurley caused a copy of the Notice, sworn to before a notary, to be filed with the DMV. The copy that Hurley caused to be served with the DMV included a second page, which was a copy of a Lincoln Police Department field observation and

performance testing report. The report included details about Taylor's performance on the field sobriety tests, as well as iterating the results of the chemical test. The report was specifically referred to in the Notice, which includes a blank line for the arresting officer to indicate "the reasons for the arrest." In that blank, Hurley indicated, "See DWI probable cause form." Hurley did not provide a copy of the report to Taylor.

On June 3, 1999, the DMV received Taylor's petition for a hearing to contest the automatic revocation of her license. The hearing was conducted on June 17, before a hearing officer. The hearing was conducted as an informal hearing. See 247 Neb. Admin. Code, ch. 1, § 019 (1998). Hurley was the only witness to testify, and he testified about the course of events as set forth above. At the conclusion of the hearing, the hearing officer issued a "Proposed Findings of Fact, Proposed Conclusions of Law, and Recommended Order of Revocation." The hearing officer found that there was probable cause to believe that Taylor was operating or in the actual physical control of a motor vehicle in violation of § 60-6,196 or a city or village ordinance enacted pursuant to that statutory section and that Taylor was operating or in the actual physical control of a motor vehicle while having an alcohol concentration in excess of ".10 or more." The hearing officer recommended that Taylor's driver's license be revoked for the statutory period.

On June 25, 1999, Taylor filed an appeal with the district court pursuant to the Administrative Procedure Act (APA). In her appeal to the district court, Taylor alleged that there was no probable cause for her arrest and that she was not given adequate notice of the reasons for her arrest to satisfy due process. Specifically, Taylor asserted that there was no probable cause for the arrest because Hurley's testimony indicated that he failed to follow the specified procedures for use of his stationary radar when he clocked Taylor prior to stopping her and executing the arrest. She further asserted that the Notice was not completed sufficiently to comport with due process because she was not given a copy of the field observation and testing report that specified the details of the reason for her arrest.

On February 28, 2000, the district court entered an order affirming the DMV revocation of Taylor's license. The district

court found that there was probable cause for the initial stop of Taylor because Hurley testified that he was traveling the posted speed limit and observed Taylor "pulling away" from him. The court further found that Taylor received sufficient notice of the charge against her to comport with due process because the Notice given to Taylor indicated that she was arrested for DUI and the record indicated that Taylor was able to cross-examine Hurley about the field observation and testing report. This timely appeal followed.

## III. ASSIGNMENTS OF ERROR
On appeal, Taylor has assigned five errors, which we consolidate as follows: Taylor asserts that the district court erred in affirming the DMV revocation of her driver's license because (1) the district court erred in finding that there was probable cause for Taylor's arrest and (2) the district court erred in finding that Taylor received sufficient notice of the reasons for her arrest.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW
Decisions of the director of the DMV, pursuant to Nebraska's administrative revocation statutes, are appealed under the APA. Neb. Rev. Stat. § 60-6,208 (Reissue 1998). See, also, *Muir v. Nebraska Dept. of Motor Vehicles*, 260 Neb. 450, 618 N.W.2d 444 (2000). A final order rendered by a district court in a judicial review pursuant to the APA may be reversed, vacated, or modified by an appellate court for errors appearing on the record. Neb. Rev. Stat. § 84-918 (Reissue 1999); *Muir v. Nebraska Dept. of Motor Vehicles, supra*; *Connelly v. Department of Motor Vehicles*, 9 Neb. App. 708, 618 N.W.2d 715 (2000).

When reviewing an order of the district court under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Muir v. Nebraska Dept. of Motor Vehicles, supra*; *Connelly v. Department of Motor Vehicles, supra*. An appellate court, in reviewing a district court's judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings.

*Id.* Whether a decision conforms to the law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. *Muir v. Nebraska Dept. of Motor Vehicles, supra.* See, also, *Connelly v. Department of Motor Vehicles, supra.*

The interpretation of statutes and regulations presents questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below, according deference to an agency's interpretation of its own regulations, unless plainly erroneous or inconsistent. *Connelly v. Department of Motor Vehicles, supra.* In the absence of anything to the contrary, language contained within a rule or regulation is to be given its plain and ordinary meaning. *Id.* An appellate court will not resort to interpretation to ascertain the meaning of words in a rule or regulation which is plain, direct, and unambiguous. *Id.*

## 2. Probable Cause

Taylor first asserts that there was no probable cause for Hurley's initial stop of her vehicle. Taylor asserts that Hurley did not stop her vehicle until after he stopped and executed a check of her speed with a stationary radar gun and that Hurley testified at the administrative hearing that there were certain procedures that were supposed to be followed in using the stationary radar gun, but that he did not follow the procedures in the instant case because he "didn't have time." The hearing officer specifically found that "the result of the clock is not considered."

Both the hearing officer and the district court specifically found that Hurley had probable cause to stop Taylor's vehicle independent of the radar check. The hearing officer and the district court both found that Hurley testified he was traveling at the posted speed limit and that Taylor's vehicle was "pulling away from him." Specifically, Hurley testified that Taylor's vehicle was initially approximately three car lengths ahead of his patrol car and then continued to pull away from his patrol car until it was seven or eight car lengths ahead when he decided to stop and check its speed with the radar gun.

It is fundamental that when a police officer observes a traffic offense, no matter how minor, he has probable cause to

stop the driver of the offending vehicle. See *State v. Hiemstra*, 6 Neb. App. 940, 579 N.W.2d 550 (1998). An officer's determination that a driver is exceeding the posted speed limit can be premised on a visual observation based on the speed of the officer's vehicle and an observation of the driver's vehicle in relation thereto. See *id.* Where the actual speed of the driver's vehicle is not at issue, the officer's estimate that the driver is exceeding the speed limit need not be confirmed with electronic or mechanical speed measurement devices to confer probable cause on the officer to make a stop. See *id.*

In the present case, Hurley testified that he witnessed Taylor's vehicle exceeding the speed limit. Hurley was traveling at the posted speed limit and observed Taylor's vehicle to be traveling at a greater speed. This provided Hurley with probable cause for the stop. The fact that Hurley's subsequent confirmation with the stationary radar gun may have been foundationally defective is of no matter. This assigned error is without merit.

### 3. SUFFICIENCY OF NOTICE

Taylor challenges the sufficiency of the notice she was given of the reasons for her arrest. Taylor asserts that the Notice was insufficient to comport with procedural due process and was insufficient to satisfy the statutory requirements to establish a prima facie case for revocation.

### (a) Due Process

The Nebraska Supreme Court has stated, concerning the level of procedural due process which is required in administrative proceedings:

> " '[Procedural due process is] simply that fundamental fairness which a person has the right to expect—even demand—and receive through our system of law. For this reason, in proceedings before an administrative agency or tribunal which has jurisdiction . . . procedural due process requires the following: notice . . . identification of the accuser; factual basis for the accusation; reasonable time and opportunity to present evidence concerning the accusation; and a hearing before an impartial board. . . . Under our standard of review, once the record discloses that those elements of due process existed with respect to the findings

and action of an administrative agency or tribunal, further judicial action is neither permissible nor required.' "
*Geringer v. City of Omaha*, 237 Neb. 928, 934-35, 468 N.W.2d 372, 377 (1991), quoting *States v. Anderson*, 219 Neb. 545, 364 N.W.2d 38 (1985). Accord *In re Appeal of Levos*, 214 Neb. 507, 335 N.W.2d 262 (1983). See, also, *Crown Products Co. v. City of Ralston*, 253 Neb. 1, 567 N.W.2d 294 (1997).

Taylor asserts that she was not provided adequate notice or factual basis for the accusation against her or an adequate opportunity to defend against the charge or cross-examine the witnesses against her. Taylor argues that because the Notice did not set forth the specific reasons for the arrest, but, rather, indicated to "[s]ee DWI probable cause form," which she was not provided a copy of, she did not receive adequate notice to comport with the due process standards set forth above. We disagree.

Neb. Rev. Stat. § 60-6,205 (Reissue 1998) provides the procedure when a person arrested pursuant to Neb. Rev. Stat. § 60-6,197 (Reissue 1998) submits to a chemical test of blood or breath and that test discloses the presence of alcohol of a concentration specified in § 60-6,196. Section 60-6,205(2) directs the arresting officer to immediately forward to the director of the DMV a "sworn report." Section 60-6,205(3) provides what that report shall state:

> (a) that the person was validly arrested pursuant to section 60-6,197 and the reasons for such arrest, (b) that the person was requested to submit to the required test, and (c) that the person submitted to a test, the type of test to which he or she submitted, and that such test revealed the presence of alcohol in a concentration specified in section 60-6,196.

In the instant case, the "sworn report" is the Notice, and it contains all the information required by this provision, except possibly the "reasons for such arrest." In this regard, the form does indicate that there were reasonable grounds to believe that Taylor was operating a motor vehicle while under the influence of alcoholic liquor, that she was validly arrested pursuant to § 60-6,197, that she was required to submit to a chemical test, that she submitted to the test, and that the test results revealed an alcohol concentration of .190 grams per 210 liters of breath. The Notice contains a place for the officer to fill in, on a blank

line, "the reasons for the arrest." In this case, Hurley wrote only, "See DWI probable cause form."

■■■ The field observation and testing report was attached to the Notice when the Notice was forwarded to the DMV. The report describes Taylor's performance during the sobriety tests and her behavior, speech, and appearance. The report would clearly be sufficient to show the reasons for Taylor's arrest. Hurley gave Taylor a copy of the Notice, but not a copy of the report. It is the failure to give her a copy of the report which Taylor asserts violated her due process rights to notice, factual basis for the accusation, and opportunity to defend against the accusation. Both the hearing officer and the district court rejected Taylor's contention on this point because there is no statutory requirement that an arrested person be given the reasons for his or her arrest. We are also unable to find any statutory authority imposing such a requirement.

A study of the Notice indicates that the information provided to Taylor on the Notice clearly gave her notice that she was being accused of DUI and failing a breath test. A review of the record indicates that Taylor's counsel conducted an extensive cross-examination of Hurley concerning all of the field sobriety test results, which were detailed in the report not provided to Taylor. It is apparent that the Notice form was intended to allow efficient administration of the law by using the same form to serve as notice, a report, and a temporary license. The fact that the Notice, when completed, provides the arrested person with some information he or she is not entitled to under the statutes does not mean the arrested person is deprived of due process simply because all of the additional information was not given to the person. It is further apparent that Taylor could have obtained a copy of the report through discovery, being aware of its existence from the Notice provided to her, but she made no apparent effort to do so. This assigned error is without merit.

### (b) Prima Facie Case

Taylor also asserts that Hurley's failure to specify the "reasons for arrest" on the Notice prevented the DMV from establishing a prima facie case under the Nebraska Administrative Code. The code provides as follows: "<u>Sworn Report</u>. The sworn

affidavit of the arresting officer shall be received into the record by the Hearing Officer as the jurisdictional document of the hearing, and upon receipt of the sworn report, the Director's order of revocation has prima facie validity." 247 Neb. Admin. Code, ch. 1, § 006.01 (1998). As noted above, § 60-6,205(3) requires the sworn report to include certain information, including the reasons for the arrest.

In the present case, the Notice did not set forth the specific reasons for the arrest, but referenced the field observation and performance testing report, which was attached to the Notice when it was delivered to the director of the DMV. At the hearing before the hearing officer, both the Notice and the attached report were received into evidence as the sworn report. Taylor asserts that the report is the only document which contains the statutorily required language concerning the reasons for her arrest and that because the report does not contain a notarized, sworn attestation and signature, it does not qualify as a "sworn report" to satisfy the Nebraska Administrative Code provisions for establishing a prima facie case.

In *State v. Lozano*, 209 Neb. 772, 311 N.W.2d 529 (1981), the Supreme Court addressed a similar argument. In *Lozano*, the defendant asserted that transcripts of intercepted telephone calls referred to in an affidavit for a search warrant and attached to the affidavit should not be considered in establishing probable cause because they were not separately supported by oath or affirmation. The Supreme Court rejected this argument and held that because the affidavit referred to and incorporated the transcripts, there was no need for them to be separately supported by an oath or affirmation. *State v. Lozano, supra.*

We think the same rationale as the Supreme Court followed in *State v. Lozano, supra,* is applicable here. The Notice was sworn to, as required by the statute. The Notice specifically referred to the field observation and performance testing report which was attached to the Notice when it was received into evidence. We see no need for the report to have been separately supported by an oath or affirmation. As such, the Notice and report contained the information required by the statute and was sufficient to establish a prima facie case under the Nebraska Administrative Code. This assigned error is without merit.

## V. CONCLUSION

We find no merit to Taylor's assignments of error. Hurley's stop of her car was supported by probable cause, she was not denied due process, and the Notice received at the hearing was sufficient to establish a prima facie case for revocation. We therefore affirm.

AFFIRMED.