STATE OF NEBRASKA, APPELLANT, V. RANDALL S. WHITMORE, JOHN R. WHITE, and ROXANNA L. HENDERSON, APPELLEES.

340 N.W.2d 134

Filed November 4, 1983. No. 83-476.

Donald L. Knowles, Douglas County Attorney, and Robert C. Sigler, for appellant.

James Martin Davis, for appellee White.

Ralph A. Smith and Martin J. Kushner, for appellees Whitmore and Henderson.

HASTINGS, J.

The State has appealed, pursuant to the provisions of Neb. Rev. Stat. § 29-824 (Reissue 1979), from an order of the Honorable Paul J. Hickman, a judge of the District Court for Douglas County. That order sustained the motions by the defendants, Randall S. Whitmore, John R. White, and Roxanna L. Hender-

son, to suppress evidence obtained by the interception of telephone conversations.

On October 21, 1981, the Douglas County attorney, in a sworn affidavit, applied to the Douglas County District Court for an electronic surveillance order to intercept the communications for the telephone number of James White. Authorization was granted by District Judge John T. Grant in an order entered the same day. Later, on November 20, 1981, an extension of this original order was sought and granted by Judge James M. Murphy of the same court. On November 6, 1981, electronic surveillance was also sought and received for two other telephone numbers associated with the defendants. On December 1, 1981, all electronic surveillance was terminated by District Judge James M. Murphy. Information arising out of the wiretap led to the arrest of the defendants.

The defendants were charged with violating various provisions of the Nebraska Uniform Controlled Substances Act. Evidentiary hearings on the motions to suppress were held on November 23 and December 20, 1982, in Douglas County. The trial court made three specific findings to support suppression when it stated: "The Court having found that the initial intercept order of October 21, 1981, the order of November 6, 1981, and the order of November 20, 1981, to each be facially insufficient and the Court deceived by the improper inclusion of gambling calls and calls obviously not criminal in nature into the logs and the improper minimization of a number of calls, hereby suppresses the conversations intercepted . . . ."

In its order suppressing the evidence the trial court found the wiretap orders to be facially insufficient because the Douglas County attorney failed to provide, as required by Neb. Rev. Stat. § 86-705(6) (Reissue 1981), that the authorization to intercept "must terminate upon the attainment of the authorized objective." It is noted, though, that the trial

court also stated § 86-705(6) required the order to contain a provision relating to minimization and that the original order did so when it stated that "the interception should be conducted in such a manner as to minimize the communications not relating to this order." Nevertheless, the trial court held that, despite this particular minimization language, the order was still facially insufficient because the order did not state a specific authorized objective to guide enforcement officers to determine when to terminate the wiretap upon the attainment of the authorized objective.

This court will refer to the omission of all the statutory language as "the absence of minimization language." Section 86-705(6) provides in part as follows: "No order entered under this section may authorize or approve the interception of any wire or oral communication for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty days. . . . Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable . . , and must terminate upon attainment of the authorized objective, or in any event in thirty days."

The initial orders and the extension order contained identical provisions except for the authorized surveillance period. The relevant language in these orders was as follows: "That there is probable cause to believe that . . . have committed and are about to commit an offense enumerated in Sections [sic] 86-703, Nebraska Revised Statutes, 1943, as amended, to-wit: illegal narcotics. That there is probable cause for the belief that particular communications concerning the offense of illegal narcotics may be obtained if an interception is authorized. . . . That the authorization to intercept said communications should be allowed for a period of thirty (30) days from the date of the actual physical hookup, and should not automatically terminate

when the described communications have first been obtained. . . . IT IS FURTHER ORDERED, that said authorization shall continue for a period of thirty (30) days from the date of the actual physical hookup, and shall not automatically terminate when the described communications have first been obtained."

The State in this appeal argues the trial court overlooked the rule set out by this court in *State v. Kolosseus*, 198 Neb. 404, 408, 253 N.W.2d 157, 160 (1977), where we stated: "Federal law preempts the field in the area of interception of oral or wire communications and prohibits the use of such intercepted communications or any evidence derived therefrom, if the disclosure is in violation of Title 18 U.S.C.A. Federal law authorizes such interceptions and use of such evidence if a state statute permits it and the authorizing state statute meets the minimum requirements of the pertinent provisions of the federal statute. Title 18 U.S.C.A., § 2516. [Citation omitted.]"

The State contends further that the trial court should have followed the reasoning of *United States v. Cafero*, 473 F.2d 489 (3d Cir. 1973), in which the Third Circuit Court of Appeals interpreted 18 U.S.C. § 2518(5) (1970), similar to our § 86-705(6), "as requiring automatic termination upon attainment of the objective of the authorization irrespective of whether a statement to this effect has been included [in the order] by the authorizing judge." *Id.* at 496.

The contention of the State has merit. This court has consistently looked to federal law in interpreting the provisions of Neb. Rev. Stat. §§ 86-701 et seq. (Reissue 1981). See, *State v. DiMauro and Kessler*, 205 Neb. 275, 287 N.W.2d 74 (1980); *State v. Kolosseus, supra*. In *Kolosseus* this court specifically said at 412, 253 N.W.2d at 162: "Title 18 U.S.C.A., section 2518, and section 86-705, R.R.S. 1943, are, in all substantive ways and in wording, virtually identical. They describe the information the application

must contain, what the judge entering the order must be able to find, and what the order must contain, as well as certain other matters."

Although there was language contained in *Cafero* to indicate that an authorization order for wiretapping a telephone would not be invalid for the failure to include statutory minimization language, the Third Circuit Court of Appeals did not specifically address that issue. Nevertheless, the Third Circuit Court of Appeals did address the issue in *United States v. Vento*, 533 F.2d 838 (3d Cir. 1976), when it specifically held it was possible to have substantial compliance with the requirements of § 2518 of the Omnibus Crime Control and Safe Streets Act of 1968 although the minimization language had not been included in the order.

In *Vento* the court stated: "Compliance could be proven at a hearing on the basis of testimony, affidavits and the logs of the intercepting agents. A hearing could also show whether the failure to include the minimization language had prejudiced the defendant. Where, despite the want of a provision, minimization procedures were in fact executed, there would be no harm to a defendant. . . .

"Finally, the minimization clause would appear to be a 'less crucial' requirement of Title III. The minimization proviso of section 2518(5) complements the specific requirements of section 2518(4), but it is section 2518(4) that gives 'significant directions to law enforcement officials as to how reasonable interception will be minimized.' The failure to include the minimization phrase when the basic guidelines have been supplied and where there exists a means of measuring compliance with the minimization provisions of the statute cannot be said to be fatal. It was not the intent of Congress to mandate the suppression of evidence for every facial irregularity in a warrant. *See* 1968 U.S.Code Cong. & Admin.News, pp. 2184-85." 533 F.2d at 861 and n.73.

In *Vento* the facts are similar to the present situ-

ation. In *Vento* the wiretap was sufficient, even though the wiretap order did not include the minimization language of 18 U.S.C. § 2518(5) (1976), because the order did comply with § 2518(4), which requires, inter alia, the specification of: "(a) the identity of the person . . . whose communications are to be intercepted; (b) the nature and location of the communications facilities as to which . . . authority to intercept is granted; (c) a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates; . . . [and] (e) the period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained." In this case, even though the orders contained abbreviated minimization language not sufficient under the requirements of § 86-705(6), the orders did comply with § 86-705(4), similar to § 2518(4).

Another federal circuit court has also considered the question whether the absence of minimization language in an order for a wiretap constitutes a minor facial insufficiency rather than an insufficient order. In *United States v. Cirillo*, 499 F.2d 872, 879-80 (2d Cir. 1974), *cert. denied* 419 U.S. 1056, 95 S. Ct. 638, 42 L. Ed. 2d 653, the Second Circuit decided the "omission of the 'talismanic minimization language' " does not vitiate an interception order and the absence of minimization language is a mere " 'technical defect' " so long as the monitoring officers were aware of the requirement of minimization and abided by it.

Thus, it is clear the current federal law does not adhere to a standard of strict compliance, but applies a lesser standard of substantial compliance, and the facial insufficiency is a mere technical defect where minimization procedures were executed. In fact, some courts doubt whether any minimization directive is required in the order, under the federal

statute or Constitution. *United States v. Dorfman*, 542 F. Supp. 345 (N.D. Ill. 1982). See, *United States v. Vento*, *supra*; *United States v. Cirillo*, *supra* (interpreting identical New York statute); *United States v. Rizzo*, 492 F.2d 443 (2d Cir. 1974), *cert. denied* 417 U.S. 944, 94 S. Ct. 3069, 41 L. Ed. 2d 665; *United States v. Manfredi*, 488 F.2d 588 (2d Cir. 1973), *cert. denied* 417 U.S. 936, 94 S. Ct. 2651, 41 L. Ed. 2d 240 (1974).

In *State v. Kohout*, 198 Neb. 90, 251 N.W.2d 723 (1977), we held that no evidence should be suppressed because of technical irregularities not affecting the substantial rights of the accused. See application of rule in one-judge opinion by Caporale, J., in *State v. Brennen*, 214 Neb. 734, 336 N.W.2d 79 (1983).

In conclusion, this court believes that since the state provisions in § 86-705 are similar to the provisions of § 2518, and since the federal courts have had occasion to consider the specific issue of facial insufficiency of the order, we should conclude that in a wiretap order it is possible to have substantial compliance with § 86-705 despite the absence of minimization language required by § 86-705(6).

We note that the failure to include the required termination language did not prejudice the defendants. We believe that compliance with the minimization requirements was proven at the hearing on the motion to suppress, on the basis of the testimony, affidavits, and logs of the intercepting agents. In this case the evidence adduced at the suppression hearing indicated the police met their obligation to comply with the minimization requirement. Although the police officers were not given written instructions with respect to minimization, the supervising officer testified that the majority of the officers had worked wiretaps before, in which they had been instructed how to minimize. The monitoring officers testified that they were given copies of or had read the wiretap order. Officer Joseph Nepodal

testified he received verbal instructions on minimization. In reviewing the log summaries certain calls were minimized. It is obvious from the evidence minimization procedures were in effect. The next question to address is whether "minimization" occurred as a matter of fact.

Defendants contend improper minimization occurred. Both parties recognize the appropriate standard set out by the U.S. Supreme Court in *Scott v. United States*, 436 U.S. 128, 98 S. Ct. 1717, 56 L. Ed. 2d 168 (1978). In *Scott* the Court determined that minimization is to be judged on a case-by-case analysis of the reasonableness of the government's conduct in terminating nonpertinent conversations, and whether the agents have in fact conducted the wiretap in such a manner will depend on the facts and circumstances of each case. In *Scott* the Court went on to say, "The statute does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to 'minimize' the interception of such conversations." *Id.* at 140.

The courts agree that whether the police acted reasonably in a given case is affected by a number of factors, including the nature and scope of an alleged conspiracy, the government's reasonable expectations of the character of the conversations they will be intercepting, and the extent of ongoing judicial supervision over surveillance. See, *United States v. Hyde*, 574 F.2d 856 (5th Cir. 1978); *United States v. Clerkley*, 556 F.2d 709 (4th Cir. 1977), *cert. denied* 436 U.S. 930, 98 S. Ct. 2830, 56 L. Ed. 2d 775 (1978); *United States v. Vento*, 533 F.2d 838 (3d Cir. 1976); *United States v. Daly*, 535 F.2d 434 (8th Cir. 1976).

The courts also agree that at the early stages of the investigation the police have greater leeway to monitor, especially where all the parties to the alleged conspiracies are not known. *United States v. Hyde, supra; United States v. Chavez*, 533 F.2d 491

(9th Cir. 1976), *cert. denied* 426 U.S. 911, 96 S. Ct. 2237, 48 L. Ed. 2d 837; *United States v. Quintana*, 508 F.2d 867 (7th Cir. 1975).

In the instant case the police had substantial reason to believe others were involved with the defendants in illegal drug trafficking in the Omaha area and that this was not just a "small-time operation," as the defendants contend.

The second factor to look at is the government's reasonable expectations of the character of the conversations to be intercepted. In this case the phones were located in the residences of the two defendants who were thought to be the top Omaha connections in this drug operation. Also, for the public telephone that was tapped, the police stipulated that officers would not intercept any communications from that telephone unless the officers observed Randall Whitmore or persons identified as agents of Randall Whitmore using the telephone.

The third factor is the extent of judicial supervision. In this case it was suggested that there was some evidence that the issuing court was inattentive in its monitoring of the wiretap progress, since the interim reports were not dated by the county attorney and there was no evidence that the authorizing judge ever reviewed these reports during the initial 30-day maximum.

Nevertheless, the applications and affidavits for the November 6 wiretap order and the November 20 extension order were quite detailed in setting out the relevant conversations connected with the drug operations. These affidavits form a sufficient basis to find that adequate judicial supervision had indeed taken place.

Defendants seeking to suppress evidence obtained pursuant to a wiretap because of the failure of the police to comply with minimization requirements must do more than identify particular calls which they contend should not have been intercepted; they must establish a pattern of interception of innocent

conversations which developed over the period of the wiretap. *United States v. Dorfman*, 542 F. Supp. 345 (N.D. Ill. 1982). The trial court concluded there was improper minimization of a number of calls that were not criminal in nature or were improperly included as criminal when the calls related to gambling.

In reviewing the affidavits and logs in this case, it appears that while many calls, on their face, purport to be personal in nature, there is evidence that the calls are of questionable criminal nature because they relate to a trip to Florida to purchase drugs. The trial court specifically stated many legitimate business calls between principals should have been minimized and were not. In response to the officers' contention that the calls were somehow coded, the trial court believed the officers were waiting for the principals to say something detrimental. The officers' contention does indeed seem reasonable, since the affidavits contained in the application for the wiretap order include two informants' claims that the defendant Randy Whitmore's seafood business was a front for a narcotics operation. It was obvious from the log summaries that the defendants were very cautious in discussing certain matters over the phone.

The trial court also objected to the complete interception of gambling-related calls because the intercepting officers never requested an expansion of the order to include gambling calls. Section 86-704(5) states in part: "When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom may be disclosed or used as provided in subsections (1) and (2) of this section."

As *United States v. Dorfman, supra,* held, where

agents are properly monitoring a call which turns to criminal activity not covered by the order, they are permitted to continue the interception so long as the conversation was intercepted before a pattern of interception not authorized by the warrant developed. It is clear from the Nebraska statute the initial interception of the gambling calls was valid. It is less clear whether a pattern of interception not authorized by the warrant developed. In reviewing the logs almost all of the gambling calls were very short in duration, and frequently contained drug-related information. The continued interception of the calls was not improper minimization. The gambling calls may have been misleading when labeled as criminal in nature on the reports, but the interception was not improper.

The defendants next argue the court was deceived by the improper inclusion of gambling-related calls labeled as criminal in nature in the interim reports. The trial court itself made the factual finding that the deceptive reports were one of the grounds to suppress evidence derived from the intercepted communications. However, in scrutinizing the evidence, the trial court also noted that the interim reports were not dated by the county attorney, and there is no evidence that "the authorizing judge ever reviewed these reports during the initial 30-day maximum. If he did, the inclusion of calls relating to gambling would have deceived him into believing that the intercept was more effective than it actually was."

The record in this case contains no evidence to indicate the interim reports were relied on by the issuing court. In the absence of evidence which shows the judges relied on deceptive interim reports, the finding by the trial court that the interim reports were a ground for suppression is rejected. Regardless of the absence of information on whether the interim reports were used, the applications and affi-

davits of November 6 and November 20, 1981, constituted partial progress reports.

Factfindings by the trial court on a motion to suppress will not be overturned on appeal unless clearly wrong. A totality of the circumstances test is used. *State v. Lamb*, 213 Neb. 498, 330 N.W.2d 462 (1983); *State v. Strickland*, 209 Neb. 133, 306 N.W.2d 600 (1981). The record does not support the trial court's conclusion that improper minimization occurred, nor does it reveal that the interim reports were improperly relied on. Again we reiterate the rule that no evidence may be suppressed because of technical irregularities not affecting the substantial rights of the accused.

From the record of the trial court it appears that it suppressed the conversations because it found the orders and extension of one of the orders permitting the interception of telephone communications to be faulty. The court was also disturbed by the possible deception which could occur when handling interim reports.

We strongly recommend the suggestion by the trial court that interim reports be dated by the county attorney; that the judge be asked to date and acknowledge receipt of the reports; that the reports include transcripts of criminal calls, or at least some of them; and that a report be made to the court on how the interception is progressing, which may include the total number of calls, the number of those criminal in nature, the number of nonrelevant calls, and the number of calls that have been minimized. If this is done the court will have better control over the interception of communications because it will be better informed to determine if the interception should continue.

However, it is the rule that one who seeks to suppress evidence seized pursuant to a warrant regular on its face has the burden of establishing that the warrant was invalid. *State v. Brennen*, 214 Neb. 734, 336 N.W.2d 79 (1983); *State v. Kohout*, 198 Neb. 90,

251 N.W.2d 723 (1977).   The defendants have failed to meet these burdens.

The order appealed from herein is reversed.

REVERSED.