STATE OF NEBRASKA, APPELLEE, V. KENNETH E. BRENNEN,
APPELLANT.
356 N.W.2d 861

Filed October 12, 1984. No. 83-777.

James Martin Davis of Dolan, Davis & Gleason, for appellant.

Paul L. Douglas, Attorney General, and Lynne R. Fritz, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

CAPORALE, J.

Defendant, Kenneth E. Brennen, appeals from the convictions, following a bench trial, and concurrent sentences of imprisonment for a period of 1 year on each of two counts of unlawful possession of controlled substances, to wit, cocaine and hashish. He questions the validity of the interceptions of certain telephonic conversations and the sufficiency of the evidence. We affirm.

The relevant facts concerning the interceptions are set forth in *State v. Brennen*, 214 Neb. 734, 336 N.W.2d 79 (1983) (*Brennen I*), a single-judge opinion which determined that the district court erred in suppressing evidence seized as a result of the interceptions.

The first five of the issues presented by the seven errors Brennen assigns to the interceptions were dealt with in *Brennen*

*I.* These issues are whether the interceptions were routinely employed and undertaken too early in the ongoing drug investigation, whether there was probable cause to undertake them, whether they were minimized sufficiently, whether interceptions of confidential communications were avoided, and the State's failure to file written reports. With respect to those issues we adopt the reasoning and rationale set forth in *Brennen I* and find the assignments of error presenting those issues to be without merit.

The remaining two assignments of error dealing with the interceptions concern themselves with whether the interceptions were defective in that they were not conducted in accordance with the termination provisions of the relevant statutes and were of excessive duration. Since these two issues overlap, we deal with them together.

Two provisions of Neb. Rev. Stat. § 86-705 (Reissue 1981) bear upon the termination of interceptions. Section 86-705(6) states in relevant part:

> No order entered under this section may authorize or approve the interception of any wire or oral communication for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty days. . . . Every order and extension thereof shall contain a provision that the authorization to intercept . . . must terminate upon attainment of the authorized objective, or in any event in thirty days.

Section 86-705(4) reads in relevant part:

> Each order authorizing or approving the interception of any wire or oral communication shall specify . . . (e) the period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained.

Essentially, the interception order and amended order provided that interceptions would be valid for a total of one 30-day period and were not to automatically terminate when the described communications were first obtained. Brennen argues that the failure to require termination as soon as the described communications were first obtained constitutes a

violation of § 86-705(6), making a distinction between the issues of duration and termination. It is Brennen's position that even though interceptions can last for as long as 30 days, they must terminate sooner if the objective of the authorization has been achieved. This is a correct statement of the law, as far as it goes. See *United States v. Cafero*, 473 F.2d 489 (3d Cir. 1973). However, there is more to the law than that. Brennen ignores § 86-705(4), the language of which the orders parrot. Obviously, to say that interceptions must terminate as soon as the objective of the authorization has been achieved is different than saying that interceptions must terminate as soon as the described communication has been obtained. It may take more than the interception of a single described communication to accomplish the objective of an authorization. Thus, the statutory scheme is that although interceptions need not cease upon the obtaining of a described communication, unless the order authorizing them so provides, they must cease when the objective of the authorization has been achieved, whether the order so states or not, and in no event may the interceptions extend beyond 30 days. See *United States v. Cafero, supra.*

Brennen argues that the failure of the orders to require by their own language that the interceptions terminate upon attainment of the authorized objective makes them fatally defective. Although there are cases which support that point of view, *State v. Maloof*, 114 R.I. 380, 333 A.2d 676 (1975), and *Johnson v. State*, 226 Ga. 805, 177 S.E.2d 699 (1970), we do not find them persuasive. We, as did Judge Hastings in his single-judge opinion in *State v. Whitmore, White, and Henderson*, 215 Neb. 560, 340 N.W.2d 134 (1983), accept and adopt the reasoning of *United States v. Cafero, supra*, and the line of cases cited in *Whitmore, White, and Henderson* that substantial, but not strict, compliance with the statutes is required. That is to say, the interceptions must be conducted in such a manner as not to violate substantive rights.

There is no showing the statutory scheme for intercepting telephonic communications was violated. Therefore, the record fails to sustain the last two assignments of error relating to the interceptions.

Having disposed of the issues dealing with the validity of the

458

interceptions, we turn our attention to Brennen's last assignment of error by which he claims that the evidence is not sufficient to support a conviction on either count. In reviewing this question we neither determine the plausibility of explanations nor weigh the evidence, such matters being for the trier of fact. The conviction must be sustained if, viewing the evidence most favorably to the State, there is sufficient evidence to support it. *State v. Miner*, 216 Neb. 309, 343 N.W.2d 899 (1984); *State v. Pierce and Wells*, 215 Neb. 512, 340 N.W.2d 122 (1983).

The record establishes that pursuant to a search warrant, police officers stopped a vehicle owned by Brennen, which was being operated by his paramour. The officers proceeded with Brennen's vehicle to his residence. Access to the residence was then obtained through the use of the garage door opener located in the vehicle. Among the items found by the officers while executing the search warrant at Brennen's residence was a glass vial located in a duffelbag in the bedroom closet. The vial contained a white powder residue, which was subsequently tested and found to be cocaine. In addition, the officers found a plastic container of hashish under the coffee table in the living room. Although the paramour had been sharing Brennen's residence for about 3 weeks, she told the police officers that she knew nothing of any drugs or dealings in drugs by Brennen.

Evidence that an accused has physical or constructive possession of a drug with knowledge of its presence and its character as a controlled substance is sufficient to support a finding of possession. *State v. Foster*, 196 Neb. 332, 242 N.W.2d 876 (1976). It has also been held that, although one's mere presence at a place where narcotics are found is not sufficient to prove possession, proof of guilty knowledge may be made by evidence of acts, declarations, or conduct of the accused from which the inference may be fairly drawn that he knew of the existence and nature of the narcotics at the place where they were found. *State v. Coca*, 216 Neb. 76, 341 N.W.2d 606 (1983); *State v. Bartlett*, 194 Neb. 502, 233 N.W.2d 904 (1975). It is well established that, ordinarily, when narcotics or contraband materials are found on a defendant's premises, the evidence of unlawful possession is deemed sufficient to sustain

a conviction in the absence of any other reasonable explanation for its presence. *State v. Matthews*, 205 Neb. 709, 289 N.W.2d 542 (1980); *State v. Britt*, 200 Neb. 601, 264 N.W.2d 670 (1978). *State v. Matthews, supra*, held the evidence sufficient to support the jury's finding that the defendant possessed a controlled substance found in his residence notwithstanding the presence of other persons at the residence at the time of the search. *State v. Britt, supra*, determined evidence that the defendant shared the residence with his girl friend did not defeat the jury's finding that the cocaine residue found in a plastic tube in the living room was possessed by the defendant.

In light of the above-stated principles, the evidence is clearly sufficient to establish Brennen's illegal possession of the controlled substances. He was living at the location where the controlled substances were found, his paramour had been living there but a short time and was not shown to have any guilty knowledge, the hashish was found in the living room area, and the cocaine was found in the closet in a duffelbag. The record provides no overriding explanation for the presence of the controlled substances. Therefore, Brennen's last assignment of error is likewise without merit.

AFFIRMED.

GRANT, J., not participating.

SHANAHAN, J., dissenting.

In apparently answering one question, the majority raises but avoids a more serious question.

In response to Brennen's motion to suppress, the State presented no witness to establish that minimization in any degree had been achieved or even attempted in compliance with the order expressly directing minimization throughout the wiretap. The wiretap logs, reflecting only some of the conversations monitored, are conspicuously incomplete and, therefore, lay an insufficient foundation concerning minimization. Neb. Rev. Stat. § 86-705(6) (Reissue 1981) in pertinent part provides: "Every order . . . shall contain a provision [that the wiretap] shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception . . . ." Brennen has assigned as error "interception [of his communications] was not conducted in

such a way as to minimize the interception of communication not subject to interception." Brief for Appellant at 3.

With regard to minimization *Brennen I* treated only the omission of statutory language in reference to the wiretap order, namely, the order's failure to include a verbatim recital of the provision for minimization found in § 86-705. See *State v. Brennen*, 214 Neb. 734, 336 N.W.2d 79. *Brennen I* did not dispose of the question "whether they [interceptions of communications] were minimized sufficiently," notwithstanding such averment in the majority opinion. As a result of osmosis, a question concerning statutory language relative to the wiretap order (*Brennen I*) has become resolution of a factual question about sufficiency of minimization in the present case. More fascinating is the process by which police inaction in minimization has been transformed into substantial compliance with the minimization requirement of § 86-705(6).

Protection of personal security found in the fourth amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution extends to conversations as subjects of a wiretap "search." Cf. *Berger v. New York*, 388 U.S. 41, 87 S. Ct. 1873, 18 L. Ed. 2d 1040 (1967) ("search" of conversations); cf., also, *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) ("search and seizure" of conversations).

"Unreasonable searches and seizures" prohibited by the Constitutions, state and federal, are in part prevented in Nebraska's wiretap law by requiring a magistrate's determination of "probable cause" and the additional requirement of minimized intrusion on conversations tapped. Clearly, minimization is an integral part of any wiretap order and an indispensable condition to be fulfilled for a valid wiretap. "The duty of minimization arises from the particularity and reasonableness requirements of the fourth amendment . . . ." *Post-Authorization Problems in the Use of Wiretaps: Minimization, Amendment, Sealing, and Inventories*, 61 Cornell L. Rev. 92, 93 (1975). Absent minimization in execution of a wiretap, an officer has "a roving commission to 'seize' any and all conversations." *Berger v. New York, supra* at 59.

While Nebraska's wiretap law, Neb. Rev. Stat. §§ 86-701 et

seq. (Reissue 1981), may impose a greater restriction on electronic surveillance and may afford greater protection against unreasonable searches and seizures than is provided by the Constitutions, the wiretap law of Nebraska cannot expand the use of electronic surveillance beyond the constitutional safeguard against unreasonable "searches and seizures." See *State v. Golter*, 216 Neb. 36, 342 N.W.2d 650 (1983). Required minimization is crucial to preserve the constitutional guarantee transcending any statute or order making a wiretap available to police.

> The minimization directive is a shorthand method of instructing the executing officers to remain within the authority granted by the terms of the eavesdropping order and obey the constitutional proscription of general searches. Its purpose is "to prevent improper invasion of the right of privacy provided by the fourth amendment and to curtail the indiscriminate seizure of communications." Without minimization, the execution of a surveillance order amounts to a general search.

J. Carr, The Law of Electronic Surveillance, *Executing an Electronic Search* § 507[1] at 256 (1977).

"The bedrock of our wiretap law is stringent judicial monitoring of law enforcement agencies seeking to use and using electronic surveillance—an investigative technique highly intrusive upon the privacy of the citizenry." *State v. Golter, supra* at 41, 342 N.W.2d at 653. Consequently, without minimization of intrusion a wiretap is no better than or different from a general search, which is condemned by the Constitutions.

It is noteworthy that some of the questioned taps related to pay phones and necessarily involved a high expectation of privacy of persons using public phones. A lack of specified minimization under such circumstances is a serious deficiency concerning minimization required by § 86-705(6) of the Nebraska wiretap law. Cf., *United States v. James*, 494 F.2d 1007 (D.C. Cir. 1974) (government must adopt procedures to limit interception when wiretapping public phones used by persons not under investigation); *United States v. John*, 508 F.2d 1134, 1139 n.8 (8th Cir. 1975) (interception of

communications only when it was determined by physical surveillance that a suspect was using the pay telephone).

The majority imposes no obligation on the State to make a prima facie case of compliance with the minimization requirement in the order and statute on which a wiretap is based. Requirement of a prima facie showing of minimization by the government has been adopted in various federal and state courts. See, *United States v. Armocida*, 515 F.2d 29 (3d Cir. 1975); *United States v. Quintana*, 508 F.2d 867 (7th Cir. 1975); *People v. Di Stefano*, 38 N.Y.2d 640, 345 N.E.2d 548, 382 N.Y.S.2d 5 (1976).

In demanding minimization of intrusion Nebraska's wiretap law contains a constitutionally compulsory condition precedent before the State is entitled to utilize information obtained through a wiretap. Without fulfillment of such condition the State's claim to wiretap information cannot be constitutionally honored. Fulfillment of a condition precedent before a claim can be honored is not a novelty in our jurisprudence. Protection of a substantial right of the people far outweighs any comparatively small burden on the government in requiring a prima facie showing of minimization of intrusion regarding a wiretap. Exempting the State from such a relatively minor burden is obvious in the majority opinion, but, as expressed by Justice Bradley in the not-so-recent case of *Boyd v. United States*, 116 U.S. 616, 635, 6 S. Ct. 524, 29 L. Ed. 746 (1886):

> It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be *obsta principiis* [trans: resist initial encroachments; TMS].

Any product of the Brennen wiretap is inadmissible.

In dispensing police from categorical compliance with mandatory minimization, the majority makes reduction of intrusion a meaningless matter. One does not need a wiretap to hear the call to the Constitutions as another segment of the wall around personal security collapses. In the meantime, who guards us against the guardians?

WHITE, J., joins in this dissent.