Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/07/2020 09:06 AM CST

State of Nebraska, appellee, v.
Curtis R. Brye, Jr., appellant.
___ N.W.2d ___

Filed November 15, 2019.    No. S-19-061.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law which an appellate court reviews independently of the lower court.

3. **Criminal Law: Motions to Suppress.** No evidence should be suppressed because of technical irregularities not affecting the substantial rights of the accused.

4. **Intercepted Communications.** Substantial but not strict compliance with the Nebraska wiretap statutes is required.

5. ____. Interception must be conducted in such a manner as not to violate substantive rights.

6. **Intercepted Communications: Time.** An application to intercept under Neb. Rev. Stat. § 86-291 (Reissue 2014) must be submitted to the Attorney General in close enough proximity to the submission to the court that the grounds upon which the application is based are equally applicable and the Attorney General could issue its recommendation with sufficient time so the court could timely consider it in making its determination.

7. **Intercepted Communications: Judgments.** Because interception under the Nebraska wiretap statutes occurs both at the origin or point of reception and where the communication is redirected and first heard, both of

these locations must be considered when deciding whether interception is within a court's territorial jurisdiction.

8. **Intercepted Communications: Words and Phrases.** A court can authorize interception of communications within its territorial jurisdiction, and this interception occurs both at the origin or point of reception and where the communication is redirected and first heard.

Appeal from the District Court for Douglas County: Gary B. Randall, Judge. Affirmed.

Stuart J. Dornan, of Dornan, Troia, Howard, Breitkreutz & Conway, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

Curtis R. Brye, Jr., appeals his conviction of criminal conspiracy to distribute crack cocaine. In doing so, Brye challenges the district court's failure to suppress evidence obtained during and derived from an electronic interception of his cellular telephone communications. Brye claims the State failed to comply with Neb. Rev. Stat. § 86-291 (Reissue 2014) by submitting to the district court an application to intercept Brye's communications 2 days after submitting the application to the Attorney General. Brye also claims the interception of his communications while he was outside the State of Nebraska was impermissible and beyond the court's authority under Neb. Rev. Stat. § 86-293(3) (Reissue 2014). For the reasons set forth herein, we affirm.

## BACKGROUND

From April 2017 to January 2018, an FBI task force conducted an investigation using a confidential informant (CI) to purchase controlled substances from David Gills. One such controlled buy occurred on August 24, 2017, when the CI

purchased crack cocaine from Gills. On that occasion, the CI contacted Gills by telephone to arrange the exchange. Before the exchange occurred, law enforcement observed Brye come from his residence and provide Gills crack cocaine which Gills then delivered to the CI.

Other purchases occurred on August 31, September 13, and September 25, 2017, wherein the CI bought crack cocaine from Gills. These purchases were also arranged through telephone calls between the CI and Gills. On November 8, the State received court authorization for an interception of Gills' telephone number which the CI had been utilizing to set up the buys.

A subsequent purchase occurred on November 15, 2017. On that date, the CI again contacted Gills' telephone number to solicit crack cocaine and arrange to meet. A few minutes after the CI arrived at the meeting, Gills talked to Brye on his telephone. Gills then left the meeting location and traveled to a second location where previous purchases had occurred. Gills had a second telephone conversation with Brye, wherein Brye said he would meet Gills in about 5 minutes. Seven minutes later, Brye arrived at the second location and met with Gills. Brye then left, went to his residence, returned to Gills' location, and then left again. About 1 minute later, Gills texted the CI to meet him at the second location. The CI met Gills, and Gills supplied the CI with the crack cocaine.

Thereafter, the State through the Douglas County Attorney submitted an application and affidavit for interception of Brye's telephone number to the Attorney General, who received it on December 20, 2017. Two days later, on December 22, the Attorney General issued a recommendation that the application be approved and the State submitted this recommendation and the application to the district court. On that same day, the State received court authorization for an interception of Brye's telephone number.

A final purchase was made on January 3, 2018. The CI again arranged for the buy with Gills. The CI met Gills to give

him money for the crack cocaine, and the CI and Gills agreed to meet later when Gills had the controlled substance. Gills then called Brye to obtain the requested drugs. At that point, Brye left his residence and delivered the crack cocaine to Gills. When Brye left Gills' residence, he was stopped by law enforcement and arrested. Money which the CI had given Gills was later found shoved under the back of the seat of the police cruiser Brye was placed in after his arrest. A subsequent search pursuant to a warrant of Brye's house uncovered additional crack cocaine as well as packaging material, a scale, and cash. Gills was also arrested after he provided the CI the drugs. A search pursuant to a warrant of Gills' residence and business identified more of the money the CI provided Gills, as well as other cash, handguns, and additional crack cocaine in multiple packages. Gills confirmed that Brye supplied him with crack cocaine on several occasions.

Pursuant to these events, Brye was charged with conspiracy to distribute crack cocaine, possession with intent to distribute crack cocaine, possession of a deadly weapon by a prohibited person, and failure to affix a drug tax stamp. Brye filed a motion to suppress all evidence obtained during and derived from the wiretap interception of communications authorized in the December 2017 order on the telephone number ascribed to him.

In his motion, Brye claimed the State, in applying for the interception, failed to comply with the statutory requirement under § 86-291 that an application to intercept with the court be made simultaneously with an application notifying the Attorney General. Brye argued that the State violated this requirement by submitting the application to intercept Brye's telephone number to the Attorney General 2 days before submitting the application to the court.

The court denied this claim, noting that Brye failed to allege how such an action constituted a material noncompliance with the statute or how the action prejudiced Brye to justify the suppression of part of or the entire interception. The court found

that suppression of any part of the intercepted communications was not warranted and determined that the 2-day delay "at most, if at all, is a technical violation" which "does not constitute a violation of a core statutory requirement."

Additionally, Brye claimed the State exceeded the permissible scope of the court order authorizing the interception when it intercepted communications while Brye was outside of Nebraska. On this claim, the parties agreed that the State, through its "listening post" in Douglas County, Nebraska, had intercepted some of Brye's communications when he was in Texas. However, the State noted that it did not use any evidence from the communications in Texas in its case.

The court also denied this claim. Specifically, the court determined that the interception was permissible because it was authorized by the order and because the listening post at which the State intercepted the communication was in Nebraska.

In November 2018, the State filed an amended information which retained only the charge of conspiracy to distribute crack cocaine, and the parties agreed to a bench trial on stipulated facts. In January 2019, the court found Brye guilty and sentenced him to 20 to 20 years' imprisonment.

## ASSIGNMENTS OF ERROR

Brye assigns the district court erred in overruling his motion to suppress and in determining that (1) suppression was not warranted due to an alleged violation of § 86-291 in the State's submitting the application for interception with the court 2 days after submitting it to the Attorney General and (2) the interception of Brye's communications while he was in Texas was not beyond the permissible scope of the court order.

## STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review.[1]

---

[1] *State v. Goynes*, 303 Neb. 129, 927 N.W.2d 346 (2019).

Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.[2]

[2] Statutory interpretation presents a question of law which an appellate court reviews independently of the lower court.[3]

## ANALYSIS

### Timing of Application for Interception

Brye first argues that evidence extending from the December 2017 interception order should have been suppressed because the State failed to submit the application for interception with the Attorney General and court simultaneously.

Under Nebraska law, a county attorney may make application to any district court for an order authorizing the interception of wire, electronic, or oral communications.[4] Among other justifications, a reviewing court may grant such application when the interception may provide or has provided evidence of a conspiracy to deal narcotic or other dangerous drugs.[5] While an applying county attorney is not required to obtain preapproval from the Attorney General to submit the application with a district court, Nebraska law does require the county attorney to submit the application to the Attorney General in order to obtain a nonbinding recommendation. Specifically, § 86-291 provides, in relevant part:

> At the same time a county attorney first makes application to the district court for an initial order authorizing or approving the interception of wire, electronic, or oral communications, the county attorney shall submit the application to the Attorney General or his or

---

[2] *Id.*

[3] See *State v. Uhing*, 301 Neb. 768, 919 N.W.2d 909 (2018).

[4] § 86-291.

[5] *Id.*

her designated deputy or assistant. Within twenty-four hours of receipt by the office of the Attorney General of the application from the county attorney, the Attorney General or his or her designated deputy or assistant, as the case may be, shall state to the district court where the order is sought his or her recommendation as to whether the order should be granted. The court shall not issue the order until it has received the recommendation or until seventy-two hours after receipt of the application from the county attorney, whichever is sooner, unless the court finds exigent circumstances existing which necessitate the immediate issuance of the order. The court may issue the order and disregard the recommendation of the Attorney General or his or her designated deputy or assistant.

Additionally, § 86-293(11) provides, in relevant part:

Any aggrieved person in any trial, hearing, or proceeding in or before any court . . . of this state may move to suppress the contents of any intercepted wire, electronic, or oral communication or evidence derived therefrom on the grounds that the communication was unlawfully intercepted, the order of authorization or approval under which it was intercepted is insufficient on its face, or the interception was not made in conformity with the order of authorization or approval. . . . If the motion is granted, the contents of the intercepted wire, electronic, or oral communication or evidence derived therefrom shall be treated as having been obtained in violation of sections 86-271 to 86-295.

In the present case, the State submitted the application for interception to the Attorney General on December 20, 2017. The Attorney General recommended the application be granted, and the State submitted the application and recommendation to the district court on December 22.

Brye contends that by seeking the Attorney General's recommendation prior to submitting the application to the court, the State failed to adhere to the requirement under § 86-291 that

an application for interception be sent to the Attorney General "[a]t the same time a county attorney first makes application to the district court." We disagree and find the State's submissions of the application to the Attorney General and the court substantially complied with § 86-291.

[3-5] We have previously held that no evidence should be suppressed because of technical irregularities not affecting the substantial rights of the accused, and we have been reluctant to deem provisions mandatory if something less than strict compliance would not interfere with a statute's fundamental purpose.[6] As to Nebraska's wiretap statutes specifically, we have held substantial but not strict compliance with the statutes is required.[7] That is to say, the interceptions must be conducted in such a manner as not to violate substantive rights.[8]

Relatedly, in analyzing the admissibility of wiretap evidence under federal law, the Eighth Circuit has considered three factors when determining whether an alleged deficiency is a substantive violation or a mere technical irregularity, including (1) whether the statutory procedure is a central or functional safeguard of the statute, (2) whether the purpose which the statutory procedure was designed to accomplish has been satisfied in spite of the error, and (3) whether the statutory procedure was deliberately ignored and a tactical advantage was gained thereby.[9]

---

[6] *D.I. v. Gibson*, 291 Neb. 554, 867 N.W.2d 284 (2015); *State v. Whitmore, White, and Henderson*, 215 Neb. 560, 340 N.W.2d 134 (1983) (motion to suppress resulting in one-judge opinion later adopted by full court in *State v. White*, 220 Neb. 527, 371 N.W.2d 262 (1985)).

[7] *State v. Brennen*, 218 Neb. 454, 356 N.W.2d 861 (1984).

[8] *Id.*

[9] *United States v. Civella*, 533 F.2d 1395 (8th Cir. 1976), *vacated sub nom. United States v. Barletta et al.*, 430 U.S. 902, 97 S. Ct. 1168, 51 L. Ed. 2d 578 (1977) (citing *United States v. Chavez*, 416 U.S. 562, 94 S. Ct. 1849, 40 L. Ed. 2d 380 (1974)). See, also, *U.S. v. Lomeli*, 676 F.3d 734 (8th Cir. 2012).

Under its plain language, § 86-291 requires the following: submission of the interception application to the Attorney General and the court, the Attorney General to provide a recommendation on the application to the court, and the court to make an independent determination on the application. Section 86-291 sets forth time constraints surrounding the Attorney General's recommendation and the court's approval of the application. Namely, within 24 hours of receipt by the Attorney General of the application from the county attorney, the Attorney General or his or her designated deputy or assistant, as the case may be, shall state to the district court where the order is sought his or her recommendation as to whether the order should be granted. Additionally, the court shall not issue the order until it has received the recommendation or until 72 hours after receipt of the application from the county attorney, whichever is sooner, unless the court finds exigent circumstances existing which necessitate the immediate issuance of the order.

[6] We read the requirement in § 86-291 that the submissions of these applications to the Attorney General and the court occur "[a]t the same time" to necessitate that the application be submitted to the Attorney General in close enough proximity to the submission to the court that the grounds upon which the application is based are equally applicable and the Attorney General could issue its recommendation with sufficient time so the court could timely consider it in making its determination.

In this case, the State's submission of the application to the Attorney General on December 20, 2017, ensured that the requirement of seeking the Attorney General's recommendation before consideration by the court was met. This timing satisfied the purpose of § 86-291 to provide additional safeguards to the interception of communications by requiring both the Attorney General and the court to consider the application prior to the court's making its independent determination. Accordingly, the submissions substantially complied with

§ 86-291 and any delay between the submissions was a mere technical irregularity.

In arguing the 2-day difference in the submissions of the application to the Attorney General and the court was more than a mere technical irregularity, Brye claims the timing of the submissions prejudiced him because there was no guarantee that the applications were the same version due to this time difference. However, there would have been no such guarantee even if the applications were sent on the same date. The difference in the timing of the submissions does not make it any more or less likely that the applications were different versions. Outside of arguing that the difference in the timing of the submissions created a greater implicit risk that the applications were different, Brye does not argue that the application upon which the Attorney General based its recommendation and the application approved by the court were impermissibly dissimilar. Brye also does not argue that the time difference affected the underlying grounds upon which the application was based.

Similarly, Brye's assertion that the court's receipt of the recommendation at the same time as the application prejudiced him due to the risk of the court's giving the recommendation greater weight is without merit. We find no reason to infer that a court would give additional weight to a recommendation when it is received along with the application instead of on its own. Under either scenario, the court would receive the application and the recommendation and make its determination on the appropriateness of the interception based upon both these documents.

Considering all of the above, the district court did not err in determining that there was no violation of Brye's substantive rights based upon the timing of the State's submissions of the application to the Attorney General and the court. As a result, the district court did not err in declining to suppress evidence extending from the December 2017 interception order.

## Authority to Intercept Out-of-State Communications

Brye also argues evidence extending from the December 2017 interception order should have been suppressed because the State exceeded the permissible scope of the order in intercepting communications occurring outside of Nebraska. Brye contends § 86-293(3) limits a court's authority to grant an application for interception to only those communications occurring within its territorial jurisdiction. Because the parties acknowledge the State intercepted some of Brye's communications while he was in Texas, Brye argues this interception of out-of-state communication occurred beyond the territorial jurisdiction of the court.

We disagree with Brye's interpretation of this jurisdictional statutory requirement. Section 86-293(3) permits a court to approve an "interception of wire, electronic, or oral communications or mobile telephone communications within the territorial jurisdiction of the court." "Intercept" under this section is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."[10] "Aural transfer," in turn, is defined as "a transfer containing the human voice at any point between and including the point of origin and the point of reception."[11]

[7] Explicit in the definition of aural transfer is the proposition that aural communication occurs at the communication's origin or point of reception and any point in between. As such, the location of any interception of those communications must also be measured at the communication's origin or point of reception and any point along the transfer where the communication is redirected and first heard. Because the interception occurs both at the origin or point of reception and where the communication is redirected and first heard, both of these

---

[10] Neb. Rev. Stat. § 86-280 (Reissue 2014).

[11] Neb. Rev. Stat. § 86-273 (Reissue 2014).

locations must be considered when deciding whether interception is within a court's territorial jurisdiction.

Other courts analyzing similar statutes have held that "interception" for the purpose of determining territorial jurisdiction occurs at both the location of the tapped telephone and the listening post location.[12] For instance, in *U.S. v. Henley*,[13] the Eighth Circuit found that a federal district court located in Missouri was authorized under the similarly worded federal wiretap statute to approve the interception of communications when the listening post was located in St. Louis, Missouri, even though some of the communications occurred in Illinois. In addition to interpreting territorial jurisdiction based upon statutory language, some of these outside courts have opined that this reading is supported by the mobile nature of cellular telephones and the complexity that mobility can bring in trying to determine the likely location of their use and in protecting individuals from intrusive interceptions.[14]

[8] In this case, the parties acknowledge that some of Brye's communications were acquired while he was in Texas but also agree that the State redirected and first heard these conversations at a listening post in Nebraska. Based upon the plain language of § 86-293(3) and the definitions under §§ 86-273 and 86-280 analyzed above, a court can authorize interception of communications within its territorial jurisdiction and this

---

[12] See, *U.S. v. Jackson*, 849 F.3d 540 (3d Cir. 2017); *U.S. v. Cano-Flores*, 796 F.3d 83 (D.C. Cir. 2015); *U.S. v. Henley*, 766 F.3d 893 (8th Cir. 2014); *U.S. v. Luong*, 471 F.3d 1107 (9th Cir. 2006); *U.S. v. Wilson*, 237 F.3d 827 (7th Cir. 2001); *U.S. v. Jackson*, 207 F.3d 910 (7th Cir. 2000), *vacated on other grounds* 531 U.S. 953, 121 S. Ct. 376, 148 L. Ed. 2d 290 (2000); *U.S. v. Denman*, 100 F.3d 399 (5th Cir. 1996); *U.S. v. Tavarez*, 40 F.3d 1136 (10th Cir. 1994); *U.S. v. Rodriguez*, 968 F.2d 130 (2d Cir. 1992); *State v. Ates*, 217 N.J. 253, 86 A.3d 710 (2014); *Davis v. State*, 426 Md. 211, 43 A.3d 1044 (2012).

[13] *Henley, supra* note 12.

[14] See, *Denman, supra* note 12; *Rodriguez, supra* note 12; *Ates, supra* note 12.

interception occurs both at the origin or point of reception and where the communication is redirected and first heard. Because the State redirected and first heard Brye's communications at a listening post in Nebraska, the interception occurred within the court's territorial jurisdiction. Accordingly, the district court did not err in declining to suppress evidence based on some of Brye's conversations' occurring in Texas.

## V. CONCLUSION

The district court did not err in overruling Brye's motion to suppress. The court correctly determined that the State's submission of the application to intercept to the Attorney General 2 days prior to submitting it to the court did not violate the timing requirement of § 86-291 and that the interception of Brye's communications was within the territorial jurisdiction of the court because the communications were redirected and first listened to at a Nebraska listening post.

AFFIRMED.

HEAVICAN, C.J., not participating.